COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Benton, Elder,
         Annunziata, Bumgardner, Frank, Humphreys, Clements,
         Agee,* Felton and Kelsey
Argued at Richmond, Virginia


VAHID MOHAJER
                                          OPINION BY
v.   Record No. 1957-00-4           JUDGE ROSEMARIE ANNUNZIATA
                                         APRIL 15, 2003
COMMONWEALTH OF VIRGINIA


                    UPON A REHEARING EN BANC

           FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Dennis J. Smith, Judge

      Meghan A. Matulka, Senior Assistant Public
      Defender (Office of the Public Defender, on
      brief), for appellant.

      Margaret W. Reed, Assistant Attorney General
      (Jerry W. Kilgore, Attorney General, on
      brief), for appellee.


      Vahid Mohajer appealed his convictions by a jury of forcible

sodomy and animate object penetration, contending the trial court

erred (1) in allowing the Sexual Assault Nurse Examiner ("SANE")

to state an expert opinion regarding the cause of Ward's injuries,

and (2) in finding the evidence sufficient to support the

convictions. A divided panel of this Court affirmed Mohajer's

convictions. We granted a petition for rehearing en banc and

_____

      * Justice Agee participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

stayed the mandate of the panel decision.  Upon rehearing en banc, we affirm the trial court.

## I.  BACKGROUND

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, the prevailing party below, granting to that evidence all reasonable inferences fairly deducible therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).

So viewed, the evidence established that Miranda Ward, an eighteen-year-old high school student, took her friend, Josh Whitlow, to Ana Visage Skin and Body Care.  As a graduation present, Ward had arranged for the two to receive their first professional massages.  They arrived at approximately 6:00 p.m. and were greeted by two women, one of whom was the owner.  The owner escorted Ward and Whitlow to separate massage rooms, located across the hallway from one another.

Ward and Whitlow were instructed to take off their clothes and cover themselves with wrap-around towels.  They complied as directed.  At first, Ward shared her friend's room, where the two sat in the sauna for several minutes and drank a glass of champagne.  Next, Ward was escorted back to her room, while Whitlow remained in his room.  Ward was instructed to lie on the massage table.  Mohajer entered shortly thereafter.  Mohajer was introduced to Ward as "Steve" and informed that he would perform her massage.

At the beginning of the session, the door to Ward's room remained slightly ajar. She and Whitlow were able to converse freely from their respective rooms, and often called out to one another inquiring as to how the other's treatment was proceeding. Mohajer also made small talk with her, representing to her that he was a police officer and showing her what he purported to be his police badge. His representation, which later proved to be false, made her feel "comfortable" with him at the time.

After about thirty minutes had elapsed, Whitlow was placed in another room, which precluded further communication between the two. At that point, Mohajer closed the door to Ward's room so he and Ward were alone. As Mohajer continued the massage, he moved his hands down to Ward's chest, and continued to move his hands downward, until he reached Ward's breast area and began to massage her breasts. Ward testified that she did not know "if that was supposed to be happening because [she] wasn't sure you were supposed to get that done when you were getting a massage." Ward soon realized that something was wrong, "because [Mohajer's] hands started getting a tighter grip to them and he started squeezing them harder . . . ." Ward testified that she was confused at that time and did not know "how she was supposed to react or what [she] was supposed to do."

Next, Mohajer walked to the right side of the massage table and began massaging Ward's leg. He massaged in an upward direction until his hand reached her vagina. Mohajer then

inserted first one finger, and then two fingers into Ward's vagina. Ward testified that at that point, "[her] body just — [she] didn't know what to do and it just locked down." She stated, "I remember clutching my fist and I was crying, and I just started praying and I was just like, God, please stop. I didn't know what to do because I didn't know how to react to it. I was scared to death." The expert who examined Ward testified that she observed, with her naked eye, a large abrasion on the inside portion of Ward's labia minora that was consistent with non-consensual object penetration of her vagina.

Mohajer stopped and walked to the head of the table again, next to Ward's shoulder. He grabbed her head and turned it, and Ward saw that his pants were unbuttoned and unzipped. Mohajer then pulled out his penis. Ward "tried to turn [her] head and tried to fight it off," but testified, "I don't know, there was something in me that I couldn't do it." Mohajer again turned Ward's head, and proceeded to hit her in the face with his penis until he "shoved it into [her] mouth." After he climaxed, Mohajer walked to the other side of the table to wipe his hands. Ward turned to her side and curled up into a ball.

After approximately five minutes had passed, one of the employees walked into the room and told Ward that "time was up." Mohajer left the room. Ward and Whitlow then left and went to their respective homes. Later that evening, Ward told her mother about what had occurred, and her mother called the police.

Detective James C. Hepler, of the Fairfax County Police Department, came to Ward's home, where he spoke with her and then took her to Fairfax Hospital.  She underwent a physical examination, performed by Suzanne Brown, a registered nurse, and coordinator of the hospital's SANE program.  In the course of the examination, Brown observed an abrasion to the inside portion of Ward's labia minora.

On July 27, 1999, Detective Hepler went to the spa and interviewed Mohajer.  Mohajer denied any inappropriate contact with Ward.  Mohajer ultimately provided a DNA sample to the police.  The sample tested as a positive match to a DNA sample taken from Ward.  Mohajer was subsequently indicted for forcible sodomy and animate object penetration.

Prior to trial, Mohajer filed a motion in limine seeking to bar Brown from offering expert testimony "as to causation of the alleged abrasion" to Ward's vaginal area.  Mohajer renewed his motion prior to Brown's testimony, arguing that Brown could not testify as to whether Ward sustained digital penetration and that only a medical doctor could testify as to the causation of Ward's injury.  The trial court agreed that Brown could not testify as to digital penetration, but denied the motion to the extent it sought to limit such testimony to medical doctors, stating:

> I don't think "medical professionals" are
> limited to doctors in any case other than a
> medical malpractice case, where the Statute

says they're limited to doctors.  Other than
that, an expert is an expert.  It can be a
doctor, it can be someone else . . . .

 *       *       *       *       *       *       *

But if she is qualified, she is permitted to
testify as to whether it is inconsistent
with consensual sexual relations, and that
would be permissible under the case law in
Virginia.

Following a recitation of her qualifications,[1] the trial court

accepted Brown as an expert qualified to render an opinion in the

area of "medical evidence gathering in sexual assault cases."

Brown testified that in cases where she examined a patient

alleging sexual assault, she routinely examined the vagina for

abrasions, transections, tears and/or redness or discharge in the

area.  She stated that such injuries were significant in cases

involving allegations of non-consensual sexual contact because

"[in circumstances] where there are injuries present, it is

because of the lack of human sexual response . . . ."  She

explained that "[i]n women who are engaging in consensual

activities, the body will automatically change to adapt to the

consensual relationship.  The labia . . . [and] the labia

---

[1] Brown testified that she was a registered nurse for over
twenty years; completed a certificate program to become a sexual
assault nurse examiner, which included over a thousand hours of
training; taught between one thousand and fifteen hundred hours
of sexual assault nurse examiner continuing education training;
conducted some thirteen hundred patient examinations over a
nine-year period; and has been recognized as an expert by the
courts of the Commonwealth on over one hundred and fifty
occasions.

- 6 -

minora . . . will become engorged, so they'll get larger and flatten out a little bit to prevent injuries to those areas." She further testified that "[m]any times with object penetration you can see injuries more on the lateral aspects of the vaginal area, - lateral being on the sides of the vagina. With penile penetration, typically you see injuries more posteriorly on the bottom of the hymen or the labia."

When questioned by Mohajer's counsel on cross-examination as to whether the injury she observed could have been sustained in a consensual encounter, Brown stated, "[u]sually not these injuries that are these [sic] large. Usually its macro-trauma, which is what I saw, is visual [sic] to the naked eye." Brown conceded that injuries can occur in consensual situations, but that such injuries are "[u]sually small micro-trauma that you can't see with the naked eye, just under magnification." Brown finally testified that in rare cases, one can see an injury caused by a consensual encounter with the naked eye and that in rare cases, even with proper lubrication, an individual can sustain injury.

In his case-in-chief, Mohajer testified in his own defense, conceding that he had lied to Detective Hepler. However, Mohajer claimed that the incident with Ward was entirely consensual.

At the close of the Commonwealth's case and again at the close of the evidence, Mohajer moved to strike, arguing that the Commonwealth had failed to establish that the acts occurred against Ward's will by threat, force or intimidation. The trial

court denied the motion, finding the evidence sufficient on both counts for the jury to consider.

The jury ultimately convicted Mohajer on both counts. Mohajer was sentenced to five years, with four years suspended on the count of animate object penetration, and five years, with two years suspended on the count of forcible sodomy.

## II.  ANALYSIS

### A.  ADMISSIBILITY OF EXPERT OPINION

On appeal, Mohajer contends the trial court erred in allowing the SANE nurse to "state an expert medical opinion regarding the cause of Ward's injuries."  "[W]hether a witness is qualified to render an expert opinion is a question submitted to the sound discretion of the trial court." Combs v. Norfolk and Western Ry. Co., 256 Va. 490, 496, 507 S.E.2d 355, 358 (1998) (citations omitted).  Nevertheless, "[t]he record must show that the proffered expert witness has sufficient knowledge, skill, or experience to render [her] competent to testify as an expert on the subject matter of the inquiry." Id. (citations omitted). Mohajer does not contest Brown's qualifications to testify concerning matters of "medical evidence gathering in sexual assault cases."  Instead, Mohajer argues that Virginia law prohibits Brown from providing expert testimony in a sexual assault case, because such testimony constitutes the practice of medicine, citing Code §§ 54.1-2900 through 54.1-2973.  Further,

Mohajer states that "diagnosis of the victim's injuries" does not fall within the non-discretionary tasks that registered nurses in the Commonwealth are able to perform pursuant to Code §§ 54.1-3000 and 54.1-2901.

Contrary to Mohajer's assertion, the Supreme Court of Virginia has recently held that testimony of a SANE nurse regarding the causation of physical injuries to a victim of a sexual assault is not the practice of medicine as contemplated by Code § 54.1-2900. Velazquez v. Commonwealth, 263 Va. 95, 103, 557 S.E.2d 213, 218 (2002). Accordingly, a SANE nurse need not be licensed to practice medicine to express an expert opinion on the causation of the injuries in the context of an alleged sexual assault. See id. Furthermore, Brown offered her expert opinion as to Ward's injuries in terms of whether or not her injuries were consistent or inconsistent with consensual sexual intercourse. Brown offered no "diagnosis" of Ward's injuries, nor in offering her testimony did she act outside the statutory definition of the duties of a registered nurse. See id. Thus, we affirm the decision of the trial court on this issue.[2]

---

[2] Although Mohajer arguably raised before the trial court the issue of whether Brown's testimony invaded the province of the jury by offering an opinion as to an ultimate issue of fact at trial, he raises no such argument on appeal. Accordingly, we do not address the issue here. See Bennett v. Commonwealth, 35 Va. App. 442, 452, 546 S.E.2d 209, 213 (2001).

B.  SUFFICIENCY OF THE EVIDENCE

Mohajer next argues the Commonwealth failed to establish the acts of sodomy and animate object penetration were accomplished against Ward by intimidation or force.  <u>See</u> Code § 18.2-67.1.[3]  We disagree.  On review of a claim asserting the sufficiency of the evidence, "'this Court does not substitute its judgment for that of the trier of fact.  Instead, the [verdict]

---

[3] Code § 18.2-67.1 provides, in relevant part:

> A.  An accused shall be guilty of forcible sodomy if he or she engages in . . . fellatio . . . with a complaining witness who is not his or her spouse . . . and
>
>   *      *      *      *      *      *      *
>
> 2.  The act is accomplished against the will of the complaining witness, by force, threat or intimidation of or against the complaining witness or another person, or through the use of the complaining witness's mental incapacity or physical helplessness.

Similarly, Code § 18.2-67.2, states, in relevant part:

> A.  An accused shall be guilty of inanimate or animate object sexual penetration if he or she penetrates the labia majora or anus of a complaining witness who is not his or her spouse with any object, other than for a bona fide medical purpose, . . . and
>
>   *      *      *      *      *      *      *
>
> 2.  The act is accomplished against the will of the complaining witness, by force, threat or intimidation of or against the complaining witness or another person, or through the use of the complaining witness's mental incapacity or physical helplessness.

- 10 -

will not be set aside unless it appears that it is plainly wrong or without supporting evidence.'" Jett v. Commonwealth, 29 Va. App. 190, 194, 510 S.E.2d 747, 748 (1999) (quoting Canipe v. Commonwealth, 25 Va. App. 629, 644, 491 S.E.2d 747, 754 (1997)).

## 1.  Forcible Sodomy

Ward testified that Mohajer "grabbed her head and turned it" toward him.  Ward stated she "tried to turn [her] head and tried to fight [the attack] off," but could not bring herself to do so. Then, Mohajer turned her head toward him again and proceeded to hit her in the face with his penis until he "shoved it into [her] mouth."  We find that, on this evidence, the jury could have reasonably concluded that Mohajer perpetrated the sodomy by force. Thus, we affirm his conviction on this count.

## 2.  Animate Object Penetration

In addition, we find the evidence was sufficient, as a matter of law, to prove beyond a reasonable doubt that Mohajer used intimidation to accomplish animate object penetration, and we affirm his conviction of the charge.

> Intimidation may occur without threats.
> Intimidation . . . means putting a victim in
> fear of bodily harm by exercising such
> domination and control of her as to overcome
> her mind and overbear her will.

Sutton v. Commonwealth, 228 Va. 654, 663, 324 S.E.2d 665, 670 (1985); accord Commonwealth v. Bower, 264 Va. 41, 44, 563 S.E.2d 736, 737 (2002).

- 11 -

The circumstances surrounding the assault establish that Ward was in a vulnerable position. "Intimidation may be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure." Sutton, 228 Va. at 663, 324 S.E.2d at 670. When Mohajer entered the massage room, Ward was lying on a table, naked except for a towel wrapped around her body. Mohajer falsely represented to her that he was a police officer and showed her what he asserted was a police badge, thereby making Ward feel "comfortable." As Mohajer began to massage her breasts, he started to "get a tighter grip" and "squeez[ed] them harder." Ward testified that she was confused and did not know "how she was supposed to react or what [she] was supposed to do." Ward was naked and alone in the presence of someone she believed she could trust – a masseur and police officer – and whom she allowed to touch her body only because of his position as masseur. These circumstances left her vulnerable and susceptible to the psychological pressure and control exercised by Mohajer in committing the assault.

Mohajer's actions "frightened" Ward to the point that her body "just locked down." During the incident, she cried, clutched her fist, and prayed he would stop. She testified that after he touched her breasts without her consent, she was "scared to death," because she "had no idea what was going to happen next." Ward thus feared the harm inherent in Mohajer's

assault, viz., bodily harm.  See Bower, 264 Va. at 45, 563 S.E.2d at 738 (holding that fear of sexual assault is sufficient to prove fear of bodily harm because "[s]exual assaults are assaults against the body of the victim [and] are violent acts which common knowledge tells us inflict bodily hurt on the victim").  The evidence thus clearly establishes that Mohajer's conduct intimidated Ward, put her in fear of bodily harm inherent in such an assault, and overbore her will.  See Sutton, 228 Va. at 663, 324 S.E.2d at 670.

Considering the totality of the circumstances, notably Ward's statements of fear, the vaginal injury she sustained, and the vulnerable position in which she was placed, a reasonable juror could infer that Mohajer "put [Ward] in fear of bodily harm" and intimidated her into submission.  Id.; see also Bower, 264 Va. at 45, 563 S.E.2d at 738.  Accordingly, we affirm his conviction for animate object penetration.

Affirmed.

Humphreys, J., with whom Benton and Agee, JJ., join, concurring, in part, and dissenting, in part.

I concur with the analysis and holding in Section II(A) of the majority opinion, as well as the analysis and holding of Section II(B)(1), but because I would find the evidence insufficient to establish the requisite elements of either force or intimidation to support the charge of animate object penetration, I do not join in the analysis or holding found in Section II(B)(2) of the majority opinion.

Object sexual penetration may be analogized to the crimes of rape (Code § 18.2-61), forcible sodomy (Code § 18.2-67.1), aggravated sexual battery (Code § 18.2-67.3), and sexual battery (Code § 18.2-67.4), in that each offense requires proof of "force, threat, or intimidation" or "mental incapacity" or "physical helplessness." Therefore, cases interpreting these sections of the code are useful in discerning the meaning and intent of Code § 18.2-67.2. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162-63 (2002).

> Intimidation . . . means putting a victim in fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her will. Intimidation may be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure.

Sutton v. Commonwealth, 228 Va. 654, 663, 324 S.E.2d 665, 670 (1985) (emphasis added).

- 14 -

We have held that any force used by the defendant in committing sexual assault crimes "must be sufficient to accomplish the act as well as to overcome the will of the victim." Wactor, 38 Va. App. at 381, 564 S.E.2d at 163 (citing Johnson v. Commonwealth, 5 Va. App. 529, 534, 365 S.E.2d 237, 240 (1988)). Thus, "the degree of force required to overcome [the victim's] will, 'necessarily depend[s] on the circumstances of each case, taking into consideration the relative physical condition of the participants and the degree of force manifested.'" Id. at 382, 564 S.E.2d at 163 (quoting Jones v. Commonwealth, 219 Va. 983, 986, 252 S.E.2d 370, 372 (1979)).

Wactor involved the sexual assault of a 23-year-old woman in a physical rehabilitation center. Wactor, 38 Va. App. at 377, 564 S.E.2d at 161. The woman was substantially physically incapacitated due to cerebral palsy and, thus, we found the evidence sufficient to prove that the defendant, a male nurse employed with the rehabilitation center, committed a sexual assault against her by force. Id. at 383-84, 564 S.E.2d at 164. There is no such similar physical incapacity here. Indeed, although the majority is silent on the issue of whether the element of force is supported by the evidence, I would find that the record fails to demonstrate sufficient evidence of circumstances manifesting the requisite degree of force on this charge.

Furthermore, I would find the evidence on this charge insufficient to establish the requisite degree of intimidation. Although, as the Supreme Court of Virginia stated in Commonwealth v. Bower, 264 Va. 41, 563 S.E.2d 736 (2002), "[i]t defies human experience to conclude that fear of the possibility of bodily injury caused by sexual assault is insufficient 'fear of bodily harm' for purposes of establishing sexual assault by intimidation," the Court did not change the long-standing legal proposition that the fear of bodily harm required to prove intimidation, must be of a sufficient degree to overcome the mind of the victim and "overbear her will." 264 Va. at 45, 563 S.E.2d at 738; Sutton, 228 Va. at 663, 324 S.E.2d at 670.[4] Accordingly, the degree of fear required to establish intimidation must depend upon the facts and circumstances of each particular case. See Bower, 264 Va. at 46, 563 S.E.2d at 738; see also Jones, 219 Va. at 986, 252 S.E.2d at 372; Mings v. Commonwealth, 85 Va. 638, 640-41, 8 S.E. 474, 475 (1889); Wactor, 38 Va. App. at 382-83, 564 S.E.2d at 163-64.

---

[4] Indeed, as the Supreme Court held in Bower, "[m]atters such as the victim's age, the relative size of the defendant and victim, the familial relationship between the defendant and victim and the vulnerable position of the victim . . . are relevant matters to be considered with other testimony when determining whether the victim was put in fear of bodily harm." Bower, 264 Va. at 46, 563 S.E.2d at 738. The Court did not, as the majority implies in its analysis, hold that a sexual act accomplished without consent, in and of itself, is sufficient as a matter of law to establish fear of bodily harm to a degree that would overcome the mind and/or will of the victim.

This case is simply not, as the majority implies, similar to Sutton and Bower. Sutton involved a man's conviction for the rape of his physically impaired, fifteen-year-old niece, who was in his custody. Sutton, 228 Va. at 658-59, 324 S.E.2d at 667. Furthermore, although Bower directly addressed the issue of intimidation as it relates to charges of animate object sexual penetration, Bower involved a man who was convicted of animate object sexual penetration of his thirteen-year-old daughter. Bower, 264 Va. at 43-44, 563 S.E.2d at 736-38.

The case at bar is inapposite. Indeed, each of the aforementioned cases was based upon facts which established that matters such as the conduct of the defendant, as well as the victim's age, size, custodial or familial relationship to the defendant, and/or physical impairment, placed the victim in a uniquely vulnerable position, evidencing a degree of force or intimidation sufficient to overbear her mind and will.

The majority analogizes this case to Wactor, finding that Ward, the victim here, was "uniquely vulnerable" because she was lying naked on a massage table, in the "care" of a masseur. The majority thus equates the "custodial" relationship here to that of a parent, a person standing in loco parentis, or to that of a medical caregiver. I do not read Wactor, or any of the decisions underlying the Supreme Court of Virginia's analysis in Bower, to reach so far.

- 17 -

Here, unlike the cases relied upon by the majority, there was no evidence that Mohajer's position as a masseur caused Ward to submit to his advances through fear. Further, there was no evidence, direct or circumstantial, of any conduct by Mohajer that would have tended to impose psychological pressure on Ward sufficient to overcome her mind or will. In fact, although Mohajer told Ward he was a police officer and showed her what he purported to be a badge, Ward testified that this fact made her feel more comfortable with Mohajer. Indeed, there was no evidence that Mohajer related to Ward in any type of "official capacity" as a police officer, nor was there evidence that his statement placed psychological pressure upon her to comply with his advances.

Moreover, there was no evidence presented by the Commonwealth to establish that Ward's age, her size, her physical capability and/or the relationship between herself and Mohajer in any way contributed to her submission to the assault or placed her in a position of unique vulnerability. Instead, the record indicates, at most, that the animate object penetration, which preceded the forcible sodomy, was accomplished by surprise and that Ward was thus, confused and scared, and unable to indicate that she did not consent to Mohajer's conduct.

Accordingly, I would find that, on these facts, the evidence was insufficient as a matter of law to support the

- 18 -

jury's verdict on the count of animate object penetration, and I would reverse and dismiss Mohajer's conviction on this count.

Tuesday          5th

November, 2002.


Vahid Mohajer,                                         Appellant,

  against       Record No. 1957-00-4
                Circuit Court No. CR-97214

Commonwealth of Virginia,                              Appellee.


Upon a Petition for Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata,
 Bumgardner, Frank, Humphreys, Clements, Agee, Felton and Kelsey


On October 2, 2002 came the appellant, by court-appointed counsel, and filed a petition praying that the Court set aside the judgment rendered herein on September 17, 2002, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on September 17, 2002 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35.  The appellant shall attach as an addendum to the opening brief upon rehearing en banc a copy of the opinion previously rendered by the Court in this matter.  It is further ordered that the

- 20 -

appellant shall file with the clerk of this Court twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Annunziata and Humphreys
Argued at Alexandria, Virginia


VAHID MOHAJER
                                              OPINION BY
v.   Record No. 1957-00-4          JUDGE ROSEMARIE ANNUNZIATA
                                         SEPTEMBER 17, 2002
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     Dennis J. Smith, Judge

          Michael C. Sprano, Assistant Public Defender
          (Office of the Public Defender, on brief),
          for appellant.

          Margaret W. Reed, Assistant Attorney General
          (Randolph A. Beales, Acting Attorney
          General; Mark W. Hicks, Assistant Attorney
          General, on brief), for appellee.


     Vahid Mohajer appeals his convictions by a jury of forcible

sodomy and animate object penetration.  Mohajer contends the trial

court erred (1) in allowing the Sexual Assault Nurse Examiner

("SANE") to state an expert opinion regarding the cause of Ward's

injuries, and (2) in finding the evidence sufficient to support

the convictions.  For the reasons that follow, we affirm Mohajer's

convictions.

                          I.  BACKGROUND

     Under familiar principles of appellate review, we examine

the evidence in the light most favorable to the Commonwealth,

the prevailing party below, granting to that evidence all

reasonable inferences fairly deducible therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).

So viewed, the evidence established that Miranda Ward, an eighteen-year-old high school student, took her friend, Josh Whitlow, to Ana Visage Skin and Body Care.  As a graduation present, Ward had arranged for the two to receive their first professional massages.  They arrived at approximately 6:00 p.m. and were greeted by two women, one of whom was the owner.  The owner escorted Ward and Whitlow to separate massage rooms, located across the hallway from one another.

Ward and Whitlow were instructed to take off their clothes and cover themselves with wrap-around towels.  They complied as directed.  At first, Ward shared her friend's room, where the two sat in the sauna for several minutes and drank a glass of champagne.  Next, Ward was escorted back to her room, while Whitlow remained in his room.  Ward was instructed to lie on the massage table.  Mohajer entered shortly thereafter.  Mohajer was introduced to Ward as "Steve" and informed that he would perform her massage.

At the beginning of the session, the door to Ward's room remained slightly ajar.  She and Whitlow were able to converse freely from their respective rooms, and often called out to one another inquiring as to how the other's treatment was proceeding. Mohajer also made small talk with her, falsely representing to her that he was a police officer and showing her what he

- 23 -

purported to be his police badge. Although Ward realized after the incident that he had tricked her, his false representation made her feel "comfortable" with him at the time.

After about thirty minutes had elapsed, Whitlow was placed in another room, which precluded further communication between the two. At that point, Mohajer closed the door to Ward's room so he and Ward were alone. As Mohajer continued the massage, he moved his hands down to Ward's chest, and continued to move his hands downward, until he reached Ward's breast area and began to massage her breasts. Ward testified that she did not know "if that was supposed to be happening because [she] wasn't sure you were supposed to get that done when you were getting a massage." Ward soon realized that something was wrong, "because [Mohajer's] hands started getting a tighter grip to them and he started squeezing them harder . . . ." Ward testified that she was confused at that time and did not know "how she was supposed to react or what [she] was supposed to do."

Next, Mohajer walked to the right side of the massage table and began massaging Ward's leg. He massaged in an upward direction until his hand reached her vagina. Mohajer then inserted first one finger, and then two fingers into Ward's vagina. Ward testified that she did not react at that point, "[her] body just – [she] didn't know what to do and it just locked down." She stated, "I remember clutching my fist and I was crying, and I just started praying and I was just like, God,

- 24 -

please stop.  I didn't know what to do because I didn't know how to react to it.  I was scared to death."  The expert who examined Ward testified that she observed, with her naked eye, a large abrasion on the inside portion of Ward's labia minora that was consistent with non-consensual object penetration of her vagina.

Mohajer stopped and walked to the head of the table again, next to Ward's shoulder.  He grabbed her head and turned it, and Ward saw that his pants were unbuttoned and unzipped.  Mohajer then pulled out his penis.  Ward "tried to turn [her] head and tried to fight it off," but testified, "I don't know, there was something in me that I couldn't do it."  Mohajer again turned Ward's head, and proceeded to hit her in the face with his penis until he "shoved it into [her] mouth."  After he climaxed, Mohajer walked to the other side of the table to wipe his hands.  Ward turned to her side and curled up into a ball.

After approximately five minutes had passed, one of the employees walked into the room and told Ward that "time was up." Mohajer left the room.  Ward and Whitlow then left and went to their respective homes.  Later that evening, Ward told her mother about what had occurred, and her mother called the police.

Detective James C. Hepler, of the Fairfax County Police Department, came to Ward's home shortly thereafter.  After he spoke with her, he took her to Fairfax Hospital where she underwent a physical examination, performed by Suzanne Brown, a registered nurse, and coordinator of the hospital's SANE program.

In the course of the examination, Brown observed an abrasion to the inside portion of Ward's labia minora.

On July 27, 1999, Detective Hepler went to the spa and interviewed Mohajer. Mohajer denied any inappropriate contact with Ward. Mohajer ultimately provided a DNA sample to the police. The sample tested as a positive match to a DNA sample taken from Ward. Mohajer was subsequently indicted for forcible sodomy and animate object penetration.

Prior to trial, Mohajer filed a motion in limine seeking to bar Suzanne Brown, a registered nurse and coordinator of Fairfax Hospital's SANE program, from offering expert testimony "as to causation of the alleged abrasion" to Ward's vaginal area. Mohajer renewed his motion prior to Brown's testimony, arguing that Brown could not testify as to whether Ward sustained digital penetration and that only a medical doctor could testify as to the causation of Ward's injury. The trial court agreed that Brown could not testify as to digital penetration, but denied the motion to the extent it sought to limit such testimony to medical doctors, stating:

> I don't think "medical professionals" are
> limited to doctors in any case other than a
> medical malpractice case, where the Statute
> says they're limited to doctors. Other than
> that, an expert is an expert. It can be a
> doctor, it can be someone else . . . .
>
>     *     *     *     *     *     *     *
>
> But if she is qualified, she is permitted to
> testify as to whether it is inconsistent

- 26 -

> with consensual sexual relations, and that
> would be permissible under the case law in
> Virginia.

Following a recitation of her qualifications,[5] the trial court accepted Brown as an expert qualified to render an opinion in the area of "medical evidence gathering in sexual assault cases."

Brown testified that in cases where she examined a patient alleging sexual assault, she routinely examined the vagina for abrasions, transections, tears and/or redness or discharge in the area. She stated that such injuries were significant in cases involving allegations of non-consensual sexual contact because "[in circumstances] where there are injuries present, it is because of the lack of human sexual response . . . ." She explained that "[i]n women who are engaging in consensual activities, the body will automatically change to adapt to the consensual relationship. The labia . . . [and] the labia minora . . . will become engorged, so they'll get larger and flatten out a little bit to prevent injuries to those areas." She further testified that "[m]any times with object penetration you can see injuries more on the lateral aspects of the vaginal area,

_____

[5] Brown testified that she was a registered nurse for over twenty years; completed a certificate program to become a sexual assault nurse examiner, which included over a thousand hours of training; taught between one thousand and fifteen hundred hours of sexual assault nurse examiner continuing education training; conducted some thirteen hundred patient examinations over a nine-year period; and has been recognized as an expert by the courts of the Commonwealth on over one hundred and fifty occasions.

- lateral being on the sides of the vagina.  With penile penetration, typically you see injuries more posteriorly on the bottom of the hymen or the labia."

When questioned by Mohajer's counsel on cross-examination as to whether the injury she observed could have been sustained in a consensual encounter, Brown stated, "[u]sually not these injuries that are these [sic] large.  Usually its macro-trauma, which is what I saw, is visual [sic] to the naked eye."  Brown conceded that injuries can occur in consensual situations, but that such injuries are "[u]sually small micro-trauma that you can't see with the naked eye, just under magnification."  Brown finally testified that in rare cases, one can see an injury caused by a consensual encounter with the naked eye and that in rare cases, even with proper lubrication, an individual can sustain injury.

In his case-in-chief, Mohajer testified in his own defense, conceding that he had lied to Detective Hepler.  However, Mohajer claimed that the incident with Ward was entirely consensual.

At the close of the Commonwealth's case and again at the close of the evidence, Mohajer moved to strike, arguing that the Commonwealth had failed to establish that the acts occurred against Ward's will by threat, force or intimidation.  The trial court denied the motion, finding the evidence sufficient on both counts for the jury to consider.

The jury ultimately convicted Mohajer on both counts. Mohajer was sentenced to five years, with four years suspended

on the count of animate object penetration, and five years, with two years suspended on the count of forcible sodomy.

## II.  ANALYSIS

### A.  ADMISSIBILITY OF EXPERT OPINION

On appeal, Mohajer contends the trial court erred in allowing the SANE nurse to "state an expert medical opinion regarding the cause of Ward's injuries."  "[W]hether a witness is qualified to render an expert opinion is a question submitted to the sound discretion of the trial court."  Combs v. Norfolk and Western Ry. Co., 256 Va. 490, 496, 507 S.E.2d 355, 358 (1998) (citations omitted).  Nevertheless, "[t]he record must show that the proffered expert witness has sufficient knowledge, skill, or experience to render [her] competent to testify as an expert on the subject matter of the inquiry."  Id. (citations omitted).

Mohajer does not contest Brown's qualifications to testify concerning matters of "medical evidence gathering in sexual assault cases."  Instead, Mohajer argues that Virginia law prohibits Brown from providing expert testimony in a sexual assault case, because such testimony constitutes the practice of medicine, citing Code §§ 54.1-2900 through 54.1-2973.  Further, Mohajer states that "diagnosis of the victim's injuries" does not fall within the non-discretionary tasks that registered nurses in the Commonwealth are able to perform pursuant to Code §§ 54.1-3000 and 54.1-2901.

- 29 -

Contrary to Mohajer's assertion, the Supreme Court of Virginia has recently held that testimony of a SANE nurse regarding the causation of physical injuries to a victim of a sexual assault is not the practice of medicine as contemplated by Code § 54.1-2900. Velazquez v. Commonwealth, 263 Va. 95, 103, 557 S.E.2d 213, 218 (2002). Accordingly, a SANE nurse need not be licensed to practice medicine to express an expert opinion on the causation of the injuries in the context of an alleged sexual assault. See id. Furthermore, Brown offered her expert opinion as to Ward's injuries in terms of whether or not her injuries were consistent or inconsistent with consensual sexual intercourse. Brown offered no "diagnosis" of Ward's injuries, nor in offering her testimony did she act outside the statutory definition of the duties of a registered nurse. See id. Thus, we affirm the decision of the trial court on this issue.[6]

## B. SUFFICIENCY OF THE EVIDENCE

Mohajer next argues the Commonwealth failed to establish the acts of sodomy and animate object penetration were

---

[6] Although Mohajer arguably raised before the trial court the issue of whether Brown's testimony invaded the province of the jury by offering an opinion as to an ultimate issue of fact at trial, he raises no such argument on appeal. Accordingly, we do not address the issue here. See Bennett v. Commonwealth, 35 Va. App. 442, 452, 546 S.E.2d 209, 213 (2001).

accomplished against Ward by intimidation or force.  See Code
§ 18.2-67.1.[7]  We disagree.

On review of a claim asserting the sufficiency of the
evidence, "'this Court does not substitute its judgment for that
of the trier of fact.  Instead, the [verdict] will not be set
aside unless it appears that it is plainly wrong or without
supporting evidence.'"  Jett v. Commonwealth, 29 Va. App. 190,

---

[7] Code § 18.2-67.1 provides, in relevant part:

> A.  An accused shall be guilty of forcible
> sodomy if he or she engages in . . .
> fellatio . . . with a complaining witness
> who is not his or her spouse . . . and
>
>  *       *       *       *       *       *       *
>
> 2.  The act is accomplished against the will
> of the complaining witness, by force, threat
> or intimidation of or against the
> complaining witness or another person, or
> through the use of the complaining witness's
> mental incapacity or physical helplessness.

Similarly, Code § 18.2-67.2, states, in relevant part:

> A.  An accused shall be guilty of inanimate
> or animate object sexual penetration if he
> or she penetrates the labia majora or anus
> of a complaining witness who is not his or
> her spouse with any object, other than for a
> bona fide medical purpose, . . . and
>
>  *       *       *       *       *       *       *
>
> 2.  The act is accomplished against the will
> of the complaining witness, by force, threat
> or intimidation of or against the
> complaining witness or another person, or
> through the use of the complaining witness's
> mental incapacity or physical helplessness.

- 31 -

194, 510 S.E.2d 747, 748 (1999) (quoting <u>Canipe v. Commonwealth</u>, 25 Va. App. 629, 644, 491 S.E.2d 747, 754 (1997)).

### 1. Forcible Sodomy

Ward testified that Mohajer "grabbed her head and turned it" toward him. Ward stated she "tried to turn [her] head and tried to fight [the attack] off," but could not bring herself to do so. Then, Mohajer turned her head toward him again and proceeded to hit her in the face with his penis until he "shoved it into [her] mouth." We find that, on this evidence, the jury could have reasonably concluded that Mohajer perpetrated the sodomy by force. Thus, we affirm his conviction on this count.

### 2. Animate Object Penetration

In addition, we find the evidence was sufficient, as a matter of law, to prove beyond a reasonable doubt that Mohajer used intimidation to accomplish animate object penetration, and we affirm his conviction of the charge.

> Intimidation may occur without threats.
> Intimidation . . . means putting a victim in
> fear of bodily harm by exercising such
> domination and control of her as to overcome
> her mind and overbear her will.
> Intimidation may be caused by the imposition
> of psychological pressure on one who, under
> the circumstances, is vulnerable and
> susceptible to such pressure.

<u>Sutton v. Commonwealth</u>, 228 Va. 654, 663, 324 S.E.2d 665, 670 (1985); <u>accord</u> <u>Commonwealth v. Bower</u>, 264 Va. 41, 44, 563 S.E.2d 736, 737 (2002). "It defies human experience to conclude that fear of the possibility of bodily injury caused by sexual

- 32 -

assault is insufficient 'fear of bodily harm' for purposes of establishing sexual assault by intimidation." Bower, 264 Va. at 45, 563 S.E.2d at 738.

In this case, Mohajer's actions "frightened" Ward to the point that her body "just locked down." During the incident, she cried, clutched her fist, and prayed he would stop. She testified that after he touched her breasts without her consent, she was "scared to death," because she "had no idea what was going to happen next." Ward thus feared the harm inherent in Mohajer's assault, viz., bodily harm. See id. (holding that fear of sexual assault is sufficient to prove fear of bodily harm because "[s]exual assaults are assaults against the body of the victim [and] are violent acts which common knowledge tells us inflict bodily hurt on the victim"). Her fear of bodily harm thus prevented her from communicating her objection to Mohajer's assault and was, therefore, sufficient to "overbear her will." Sutton, 228 Va. at 663, 324 S.E.2d at 670.

Considering the totality of the circumstances, notably Ward's statements of fear and the vaginal injury she sustained, a reasonable juror could infer that Mohajer "put [Ward] in fear of bodily harm" and, thus, intimidated her into submission. Harris v. Commonwealth, 3 Va. App. 519, 521, 351 S.E.2d 356, 357 (1986); see Bower, 264 Va. at 45, 563 S.E.2d at 738 (holding that sexual assaults are violent acts that inflict bodily hurt

- 33 -

on the victim).  Accordingly, we affirm his conviction for animate object penetration.

<u>Affirmed</u>.

Humphreys, J., concurring, in part, and dissenting, in part.

I concur with the analysis and holding in Section II(A) of the majority opinion, as well as the analysis and holding of Section II(B)(1), but because I would find the evidence insufficient to establish the requisite intimidation to support the charge of animate object penetration, I do not join in the analysis or holding found in Section II(B)(2) of the majority opinion.

> Object sexual penetration may be analogized to the crimes of rape (Code § 18.2-61), forcible sodomy (Code § 18.2-67.1), aggravated sexual battery (Code § 18.2-67.3), and sexual battery (Code § 18.2-67.4), in that each offense requires proof of "force, threat, or intimidation" or "mental incapacity" or "physical helplessness."  Therefore, cases interpreting these sections of the code are useful in discerning the meaning and intent of Code § 18.2-67.2.

Wactor v. Commonwealth, 38 Va. App. 375, 380, 56 S.E.2d 160, 162-63 (2002).

> Intimidation . . . means putting a victim in _fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her will_. Intimidation may be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure.

Sutton v. Commonwealth, 228 Va. 654, 663, 324 S.E.2d 665, 670 (1985) (emphasis added).

We have held that any force used by the defendant in committing sexual assault crimes "must be sufficient to accomplish the act as well as to overcome the will of the victim." Wactor, 38 Va. App. at 381, 564 S.E.2d at 163 (citing Johnson v. Commonwealth, 5 Va. App. 529, 534, 365 S.E.2d 237, 240 (1988)). Thus, "the degree of force required to overcome [the victim's] will, 'necessarily depend[s] on the circumstances of each case, taking into consideration the relative physical condition of the participants and the degree of force manifested.'" Id. at 382, 564 S.E.2d at 163 (quoting Jones v. Commonwealth, 219 Va. 983, 986, 252 S.E.2d 370, 372 (1979)). By analogy, intimidation should be no different.

Although, as the Supreme Court of Virginia stated in Commonwealth v. Bower, 264 Va. 41, 563 S.E.2d 736 (2002), "[i]t defies human experience to conclude that fear of the possibility of bodily injury caused by sexual assault is insufficient 'fear of bodily harm' for purposes of establishing sexual assault by intimidation," the fear of bodily harm must be of a sufficient degree to overcome the mind of the victim and "overbear her will." 264 Va. at 45, 563 S.E.2d at 738; Sutton, 228 Va. at 663, 324 S.E.2d at 670.[8] Accordingly, the degree of intimidation must

---

[8] Indeed, as the Supreme Court held in Bower, "matters such as the victim's age, the relative size of the defendant and victim, the familial relationship between the defendant and victim and the vulnerable position of the victim . . . are relevant matters to be considered with other testimony when determining whether the victim was put in fear of bodily harm."

- 36 -

depend upon the facts and circumstances of each particular case.
See Bower, 264 Va. at 46, 563 S.E.2d at 738; see also Jones, 219
Va. at 986, 252 S.E.2d at 372; Mings v. Commonwealth, 85 Va. 638,
640-41, 8 S.E. 474, 475 (1889); Wactor, 38 Va. App. at 382-83, 564
S.E.2d at 163-64.

This case is simply not, as the majority implies, similar
to Sutton and Bower. Sutton involved a man's conviction for the
rape of his physically impaired, fifteen-year-old niece, who was
in his custody. Sutton, 228 Va. at 658-59, 324 S.E.2d at 667.
Although Bower directly addressed the issue of intimidation, it
involved a man who was convicted of animate object sexual
penetration of his thirteen-year-old daughter. Bower, 264 Va.
at 43-44, 563 S.E.2d at 736-38.

The case at bar is inapposite. Indeed, each of the
aforementioned cases were based upon facts which established
that matters such as the conduct of the defendant, as well as
the victim's age, size, custodial or familial relationship to
the defendant, and/or physical impairment, placed the victim in
a uniquely vulnerable position, evidencing a degree of force or
intimidation sufficient to overbear her mind and will.[9]

---

Bower, 264 Va. at 46, 563 S.E.2d at 738. The Court did not, as
the majority implies in its analysis, hold that a sexual act
accomplished without consent, in and of itself, is sufficient as
a matter of law to establish fear of bodily harm to a degree
that would overcome the mind and/or will of the victim.

[9] The majority also cites Harris v. Commonwealth, 3 Va. App.
519, 351 S.E.2d 356 (1986), in support of its position.

- 37 -

Here, unlike those cases, there was no evidence, direct or circumstantial, of any conduct by Mohajer that would have tended to impose psychological pressure on Ward sufficient to overcome her mind or will. Indeed, although Mohajer told Ward he was a police officer and showed her what he purported to be a badge, Ward merely testified that this fact made her feel more comfortable with Mohajer. There was no evidence that the statement placed pressure upon her to comply with his advances. Moreover, there was no evidence submitted to establish that Ward's age, her size and/or the relationship between herself and Mohajer in any way contributed to her submission to the assault, nor was there any evidence to demonstrate that, under the circumstances, Ward was uniquely vulnerable or susceptible to such pressure. Instead, the record indicates, at most, that the act, which preceded the forcible sodomy, was accomplished by surprise and that Ward was thus, confused and scared, and unable to indicate that she did not consent to Mohajer's conduct.

---

However, Harris concerned a conviction for robbery. In holding that "[i]t is only necessary that the victim actually be put in fear of bodily harm by the willful conduct or words of the accused" and that "[t]he fear of bodily harm . . . must result from the words or conduct of the accused rather than the temperamental timidity of the victim," we found the evidence sufficient to establish Harris committed the taking by intimidation. Id. at 521, 351 S.E.2d at 357. Harris, aided by two companions, had confronted the victim on the street, physically turned the victim around and searched his jacket, and then demanded the victim's radio and watch, and took both items. Id. at 520, 351 S.E.2d at 356.

Accordingly, I would find that, on these facts, the evidence was insufficient as a matter of law to support the jury's verdict on the count of animate object penetration, and I would reverse Mohajer's conviction and dismiss on this count.