Bouldin, J.,
delivered the opinion of the court.
Several objections have been taken by the counsel for-the plaintiff in error to the judgment of the court below in this case, involving questions of both law and fact, and have been argued with much learning and ability; but in the view taken of the case by this court we deem it necessary to consider only the questions arising under-the last assignment of error. After the jury had rendered a verdict of guilty and fixed the term of the prisoner’s confinement in the penitentiary at ten years, he-moved the court to set aside the verdict and award him a new trial on the following grounds:
1st. Because the verdict had been obtained by surprise.
2d. Because it was not sustained by the evidence.
The court overruled the motion and sentenced the prisoner to ten years’ confinement in the penitentiary. To this ruling the prisoner excepted, and prayed the court to certify the facts proved on the trial, which was done accordingly.
*651 We are of opinion that the Circuit court erred in refusing, under all the circumstances of this case, to grant the new trial.
Without recapitulating or very critically analyzing the testimony, we are compelled to say that the evidence adduced to establish the felonious act — the corpus delicti— is, to say the least of it, of a very doubtful and inconclusive character. It consists exclusively of the statements of the person upon whom the offence is charged to have been committed, and is certified by the court as follows: “On the day of June 1873, it being Sunday, about 12 o’clock M., Miss Martha Spencer was at the spring (which is about one hundred yards from her father’s house); had filled her bucket and was sitting down on a rock at the spring; while sitting there some one came up behind her and seized her by the shoulders, pulled her over backwards, her honnet falling over her eyes; the person making the attack spoke to her in a low tone and told her not to make a noise ” (a suggestion which for some reason she seems to have duly respected). “She screamed once” (whether in a similar tone or not dees not appear); “but the bonnet was held over her mouth and eyes so that she was unable to make further outcry, and could only catch a glimpse of her ravisher. Her arms ivere not confined, and she made an attempt to pull the bonnet away from her eyes. She was very weak and nervous, and very much frightened, and notwithstanding her resistance, he accomplished his purpose and ravished her.”
This is her own account of the alleged criminal act,, and is all we have directly on that subject. She proves no other violence than enough to draw her backwards by the shoulders from her seat, and to hold her bonnet over her face. Her person was examined by two physicians, and whilst they both testified that it was apparent *652 that she had had recent sexual intercourse, they also proved that there was nothing to indicate that it had been accomplished by violence; “ that no bruises were found about the face, arms or person of the prosecutrix, except a small, almost imperceptible, bruise under each knee.”
It was also proved that Miss Spencer was “a large, stout woman,” and the accused was a “ medium-sized man, about twentjMhree years old.”
Can we say upon such testimony that the criminal act has been established? It would require a large degree of charity and credulity to believe that at noonday, within one hundred yards of her father’s house and within two or three hundred yards of the house of a neighbor (¥m. Spencer), a rape was perpetrated on this large and stout woman, loith both her arms perfectly free, by a medium-sized. man, who neither threatened her with violence nor did anything to disable her, and who, from her own account, had the use of but one arm, the other being employed in holding her bonnet over her face whilst the act was committed; and that all this had been accomplished with no noise to alarm the families which were so near; with not the slightest indication, from the appearance of the ground, that there had been a scuffle; and with no scratch or bruise on the person of the female to show that her chastity had not been violated without a struggle! Such testimony, we think, exceedingly weak, to say the least of it, to show that a rape had been ■committed at all, especially when it appears in the record that the accused, who lived at her father’s house, had previously, in his kitchen, attempted to take improper liberties with Miss Spencer, which she does not appear to have disclosed or resented.
But conceding the rape to be established, the evidence to connect the accused with the act is yet more doubt *653 ful and unsatisfactoi’y. Although the accused had resided at her father’s house for a year or two previous to the occurrence, and was, of coui’se, well known to the witness — voice, features, gestures and person — yet she does not swear to his identity. He spoke to her with his face very near to her’s, yet she docs not say that she recoguized his voice. She says she only caught a “ glimpse of the lower part of his face,” and only saw his back “ at a distance of about fifty or a hundi’ed yards, running away.” What she was doing from the time he left her person until he reached the distance of fifty or one hundred yards does not appear; yet when she did see him she seems to have been perfectly cool and collected, for she can tell that he wore a dirty shirt and a black felt hat. She says that, from the glimpse she had of his face, and the sight she had of his back as he ran away, she believed it ivas the prisoner. And this was all the evidence of identity except the evidence of William Spencer, who lived about two or three hundred yards from the home of the prosecutrix. He proves that he saw, on what day and at what hour does not appear, a man whom he took to be Wilson JBoxley, walking very rapidly along the road leading from Banister Spencer’s, and now and then looking backwards. He called to him and asked, “What’s your hurry?” but received no answer. He was one hundred yards off, and witness was not sure it was Boxley. “The man he saw wore a white chip hat” — not a black felt hat, as proved by Miss Spencer to have been worn by the pei’son who assailed hei\
It was further proved that the accused lived about two miles from the home of Miss Spencei’, and that he remained at his work as usual for three or four days after the occurrence at the spring, when he wa3 charged with this offence by the brothers of Miss Spencer and beaten by them. He then went to the coui’t-house and *654 caused a warrant to be issued against them; and it was , .. , not until alter these proceedings that the present prose-was commenced. We think the evidence wholly jnsu:gjcjen^ identify the prisoner as the guilty party.
Were this not so, the evidence, to say the most of it, leaves the question of identity extremely doubtful, and, under the circumstances, the verdict of the jury should have been set aside and a new trial awarded, to allow the accused the privilege of introducing the testimony set forth in his own affidavit and that of Dr. Melvin, of which he was evidently deprived by surprise.
Dr. Melvin’s testimony, as set forth in his affidavit, would have still further weakened the testimony on the question of identity. He was the committing magistrate, and the testimony of Miss Spencer, as detailed by him, is materially variant from her testimony in court; and the facts set forth in the prisoner’s affidavit satisfactorily explain his failure to have Dr. Melvin before the court.
Under all the circumstances, this court is of opinion that the court below erred in refusing to set aside the verdict and to award the prisoner a new- trial.
As the cause must be remanded to the Circuit court, it becomes necessary to dispose of the objection to the jurisdiction of that court, so earnestly and ably argued at the bar.
The objection was, that as the law stood on the 28th of July 1873, when the case was transferred from the County to the Circuit court, the prisoner had a right to be tried in the County court in which his case was pending, or, at his election, to be sent for trial to the Circuit court; that he did not elect to be tried in the latter court, and therefore his case wras never legally pending in that court.
It is certainly true that on the 25th of July 1873 the prisoner had a right to be tried in the County court, •where bis case wms pending; but it is equally true that *655 the County court had then undoubted authority, on the ■election of the prisoner or by his consent, to transfer the case to the Circuit court. It is furthermore true, on the first day of August thereafter the jurisdiction of the County court to try the case would cease; and by the mandate of the law it would, without the prisoner’s consent, be transferred to the Circuit court. On the prisoner’s motion the case had already been continued to the next term of the court, and his right to be tried in the County court was, in effect, forever gone, for in three days the new law, depriving the County courts of jurisdiction of the case, would go into ■effect. This was all well known to the court and to the •counsel on both sides, and it is reasonable to conclude that, acting on that knowledge, the transfer to the Circuit court was made with the consent and approbation of the accused. We think so because, under the circumstances then existing, it was manifestly to his interest to give that consent, and because he not only made no objection whatsoever to the transfer, but immediately thereafter applied to be allowed to give bail for his appearance in the Circuit court, which was allowed him .and was given; and because he appeared in that court in • discharge of his recognizance, and submitted to his trial without indicating the slightest objection to the jurisdiction of the court. He was in fact exactly where he would have been had no transfer been made, with the advantage of a full opportunity to meet the charge in the court in which it was absolutely necessary, under the law, which was just about to go into effect, that he ■ should be tried.
Under such circumstances we are fully justified in reaching the conclusion that the transfer was in fact made with the prisoner’s consent, and the Circuit court therefore had jurisdiction. We arrive at this conclusion *656 the more readily because it is now evidently to the advantage of the prisoner. He must be tried in the Circuit court, and is now in confinement, and it might seriously prolong that confinement were we compelled to go through the inconvenient and useless form of sending the case to the County court, to be by that court immediately sent back where it now is.
The judgment of the Circuit court must be reversed,, the verdict set aside, and a new trial awarded.
The judgment was as follows:
This day came agaiu the parties, by counsel, and the-court having maturely considered the transcript of the record and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the Circuit court erred in refusing to grant to the plaintiff in error a new trial: first, because the verdict of the jury was not sustained by the evidence; and, second, because, under the circumstances, the plaintiff in error was entitled to the benefit of Dr. Melvin’s testimony. It is therefore considered by this court that the judgment of the Circuit court be reversed and annulled, the verdict of the jury set aside, and a new trial awarded; and the case is remanded to the Circuit court for further proceedings.
Judgment reversed.