# Richmond.

## MINGS v. THE COMMONWEALTH.

### January 17th, 1889.

1. CRIMINAL PROCEEDINGS—*Rape—Evidence.*—On trial for rape, prosecutrix testified that her father hated prisoner, who offered to prove the cause;

HELD:
> The fact sought to be proved is collateral to the issue, and no reasonable inference can be drawn from it to the matter in dispute ; and is inadmissible.

2. IDEM—*Instruction—Force—Outcries.*—At such trial prisoner asks for an instruction "that such force is essential to the crime as may be adequate to overcome the resistance of the woman, taking into consideration the relative strength of the parties and other circumstances;" and the court giving it adds: "such as making outcries and giving alarm:"

HELD:
> The instruction was proper.

3. IDEM—*Case at bar.*—In case here, the evidence warrants the verdict of guilty.

Error to judgment of circuit court of Amelia county, rendered September 17th, 1888, at the trial of an indictment against James Mings for a rape, the jury having found him guilty of an attempt to commit rape and fixed his term of imprisonment in the State penitentiary at twelve years. The prisoner at the trial asked the court to give an instruction, which the court gave with an addition to which he objected. And he moved the court to set aside the verdict and grant a new trial, but the motion was denied. Thereupon the prisoner excepted to these rulings of the court, which sentenced him according to the ver-

dict, and the evidence being certified, the prisoner brought the case here by writ of error and *supersedeas.* Opinion states the case.

*George J. Hundley,* for the prisoner.

*Attorney-General R. A. Ayers,* for the Commonwealth.

LEWIS, P., delivered the opinion of the court.

The prisoner, who was indicted for rape, and convicted of an attempt to commit a rape, complains of the judgment of the lower court on three grounds:

1. The first is, that the circuit court erred at the trial in excluding certain evidence. It appears that the prosecutrix having testified that her father hated the prisoner, the latter offered to prove by another witness the cause of such hatred, but the evidence was excluded, and the prisoner excepted. We think this ruling was correct. The fact sought to be proved was collateral to the point in issue, and one from which no reasonable inference could have been drawn as to the principal fact or matter in dispute. Consequently the evidence, if admitted, would have tended to draw away the minds of the jury from the real issue in the case, and to mislead them by a multiplicity of issues, and, moreover, was inadmissible for another reason, namely, because the Commonwealth, having had no notice of such a course of evidence, was not bound to be prepared to meet it. 1 Greenl. ev. § 52.

2. The next question arises upon the prisoner's second bill of exceptions, which was taken to the action of the court in refusing to give to the jury a certain instruction as asked for by the prisoner. The instruction offered is as follows: " In order to constitute the offence of rape, force must be used. It is a necessary ingredient of the crime ; and that force must be such as may reasonably be supposed adequate to overcome the physical resistance of the

woman upon whom the rape is charged to have been committed, taking into consideration the relative strength of the parties and other circumstances of the case." To this instruction the court added the words " such as making outcries and giving alarm," and with this addition the instruction was given.

It is contended that, by the instruction as given, the jury were erroneously led to believe that making outcries and giving alarm is a sufficient resistance to a person committing a rape, and that no physical resistance on the part of a woman of sound mind and body and in the possession of her faculties is necessary to constitute the crime of rape or of an attempt to commit a rape. In other words, the idea seems to be that there can be no conviction of rape unless it appear that the victim of the outrage resisted the perpetration of the crime with all her physical strength, if she was of sound mind, etc.

Such, however, is not the law. Rape is commonly defined to be the unlawful carnal knowledge of a woman by a man, forcibly and against her will. The crime, however, really consists in the ravishment of a woman without her consent; and the question, therefore, always is, was the woman willing or unwilling? And if it appear that carnal intercourse was effected with her without her consent, the crime of rape is proved, although no positive resistance of the will be shown. Or, as Bishop expresses it, "wherever there is a carnal connection without anything which can be deemed a consent—where there is neither a consent fraudulently procured, nor any other sort of consent—by the woman, there is evidently, in the wrongful act itself, all the force which the law demands as an element of the crime." 2 Bish. Crim. Law, sec. 1078. See also *Bailey* v. *Commonwealth,* 82 Va. 107; *Commonwealth* v. *Burke,* 105 Mass. 376. Nor is there anything in *Boxley* v. *Commonwealth,* 24 Gratt. 649, in conflict with these views.

Hence it is for the jury to determine upon all the facts and circumstances of each particular case whether the woman, upon whom the crime of rape is charged to have been committed,

consented or not; and the fact that she made outcries or gave alarm, is a most material circumstance to be considered in determining that question.    This was, substantially, the meaning of the *addendum* to the instruction above-mentioned, and it is very clear that there is nothing in the instruction of which the prisoner can justly complain.    Indeed, as an abstract proposition, the instruction, taken as a whole, is more favorable to him than he had a right to demand.

3. Nor did the circuit court err in overruling the motion for a new trial.    The prosecutrix, a colored girl sixteen years of age, testifies that on the day the crime was committed, she and the prisoner were at work together harvesting in a wheat field, about a half mile from her father's house ; that soon after they went to the field the prisoner took her by the arm and pulled her into a thicket near by, and then threw her down and got upon her; that, after a long effort, he succeeded in accomplishing his purpose, during all which time she continued calling for her father and mother ; and that, after he desisted, she immediately went home and told her mother all about it.    It is true no bruises or marks were found on her person when examined by her mother, although she says the prisoner's private parts penetrated her private parts, and that she never had connection with a man before.    We do not think, however, that this circumstance affects the case, certainly not as a case of an attempt to commit a rape, which the jury in their verdict have found it to be.

The witness, Eldridge Warren, testifies that he heard her cries a distance of a half mile, and that they continued from the time he first heard them until, attracted by them, he rode on horseback "in a jog trot" to the spot where the crime was committed.    He says when within a short distance from the spot, he saw a man lying down on top of something, and that he halted and watched him for two or three minutes ; that the outcry continued, though he did not see the woman until he rode "right up to them," when the man, whom he recognized

as the prisoner, jumped up and ran off through the bushes; that the woman then sat up, when he recognized her as Kate Johnson, the prosecutrix; that she was crying, and he told her to go home, and that she started in that direction. He also says that where the parties had been lying, the grass was beaten down and the leaves kicked up "as if they had been wallowing around."

The statement of the witness that he watched the prisoner for several minutes without interfering, notwithstanding the cries of the woman, was unfavorably commented on in the argument before us, and upon this ground it was insisted that his evidence ought to be disregarded. But we do not think so, although, it is true, the admission presents the witness in a not very enviable light. Doubtless the same point was made before the jury, and yet they evidently believed his account of the matter to be true. Nor can we say he was unworthy of belief, especially in view of the affirmative evidence in the record that he is a man of veracity, and an impartial witness in the case.

The evidence of the prisoner, that the act was done with the consent of the prosecutrix, is repelled by the evidence of the latter, and the circumstances of the case already adverted to. At all events, the jury, whom the law has appointed the triers, and whose verdict is entitled to great weight, have so found, and after a careful examination of the record, we have been unable to discover anything to warrant this court in setting aside the verdict and granting a new trial. *Coleman* v. *Commonwealth*, 84 Va. 1. The judgment must therefore be affirmed.

JUDGMENT AFFIRMED.