COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Chafin and O'Brien
Argued at Williamsburg, Virginia

PUBLISHED

JEFFREY DEAN BONDI

                                                    OPINION BY
v.        Record No. 1676-17-1          JUDGE MARY GRACE O'BRIEN
                                                    MARCH 26, 2019
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge

James O. Broccoletti (Randall J. Leeman, Jr.; Zoby, Broccoletti &
Normile, P.C., on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Jeffrey Dean Bondi ("appellant") was convicted in a bench trial of object sexual penetration,

in violation of Code § 18.2-67.2(A)(2). The court sentenced him to thirty-five years of incarceration

with twenty-five years suspended. Following a post-sentencing hearing, the court also denied

appellant's motion to set aside the verdict and grant a new trial based on after-discovered evidence.

On appeal, appellant challenges the sufficiency of the evidence that he "committed any act against

the complaining witness by force, threat, or intimidation." He also assigns error to the court's denial

of his motion to set aside based on "newly discovered evidence [that] came directly from the

complaining witness."

Finding no error, we affirm appellant's conviction.

BACKGROUND

M.V., the complaining witness, was thirty-four years old at the time of trial.[1] She met appellant, a youth minister at her church, when she was in high school. M.V. described herself as a shy and "extremely modest" teenager who did not date or engage in sexual activity. Appellant was a mentor and "fatherly figure" to M.V. She became close to appellant's family and regularly visited their home. When M.V. went away to college in Harrisonburg, she displayed pictures of appellant's children in her dorm room.

During her first semester of college, appellant asked M.V. to come home to Virginia Beach for a weekend and babysit his children. He explained that his wife was going out of town and that he wanted to attend a football game. On October 26, 2001, M.V. drove to appellant's residence and babysat. When appellant returned home, M.V. was sitting on the sofa. Appellant put a pillow on her lap and lay down. Appellant had never done this before, and M.V. testified that she felt nervous and uncomfortable. Appellant reached under her shirt and put his hand "over [her] shoulder bone." He pulled M.V. down so that she was lying in front of him with his arm around her.

Appellant put his hand under M.V.'s shirt again and this time reached underneath her bra and touched her breasts. He unzipped her pants, touched the top of her underwear, and digitally penetrated her vagina once. M.V. testified that she was "completely frozen and in shock" and appellant's actions were painful and "did not feel good." Appellant apologized and told M.V., "I love you like a daughter but I'm also in love with you." Appellant put his arm around M.V., and they stayed in that position for approximately one hour.

When M.V. believed that appellant had fallen asleep, she tried to slide out from under his arm to leave. Appellant grabbed M.V.'s arm and asked where she was going. She replied that she thought appellant had gone to sleep, so "she could go home." Appellant pulled M.V. back into the

_____
[1] We refer to the complaining witness by her initials to maintain her privacy.

same position on the sofa and said, "[N]o, stay." M.V. testified that although appellant had used an apologetic tone of voice earlier, he now sounded more aggressive, insistent, and demanding. She testified that she had no option but stay.

Appellant continued to touch M.V.'s breasts and again put his fingers in her vagina. He became more aggressive; he rolled on top of M.V. and kissed her neck and mouth. M.V. did not respond but lay "[c]ompletely paralyzed" underneath him. M.V. asked appellant if he would ever engage in this type of behavior with one of his children, and he replied that he "hope[d] not." M.V. stated that she was uncomfortable, and appellant responded that she needed to leave. M.V. grabbed her keys, and appellant walked her to her car. Appellant continued to apologize, but M.V. did not respond. She testified that she felt "[s]haken" and "[s]cared" and was in considerable pain.

The next evening, M.V. saw appellant at a church party. Leigh Ellen Rodriguez, an older female mentor and friend to M.V., noticed that she was distressed. M.V. told Rodriguez that appellant had hurt her in a "sexual nature" and described the incident in "broad strokes." M.V. testified that she felt threatened and scared when she saw appellant at the party. At trial, Rodriguez testified that the night after the church party, she spoke to appellant about his actions; he told her that "something had happened," but "he didn't mean for it to happen."

Another friend, Sara Olsen, drove M.V. back to college the following day. M.V. told Olsen that appellant had placed his hands under her clothing and "hurt [her]." She did not provide Olsen with any further facts. At trial, M.V. explained that her reluctance to relate the specific details to Rodriguez and Olsen was due to her modest upbringing and the fact that she "didn't know who [she] could trust. One of the people [she] trusted the most and valued the most [and] viewed as a mentor and father figure just betrayed [her]." M.V. subsequently became depressed, her eating disorder worsened, and her grades plummeted. She temporarily left school the following semester.

Two years later, the church pastor met with appellant and M.V. They did not discuss the details of the October 26, 2001 incident, but M.V. testified that the purpose of the meeting was "reconciliation [and] forgiveness." M.V. stated that appellant apologized and that she told him that she forgave him.

In 2010, M.V. became concerned when she saw a photo of appellant accompanying youth on an overseas church trip. She contacted Rodriguez and the supervisory members of the churches and schools where appellant had worked. She told them the complete details of the October 26, 2001 incident, including that appellant penetrated her vagina with his fingers. Rodriguez's husband reported the crime to the police, and appellant was subsequently arrested and indicted by a grand jury for object sexual penetration.

The Commonwealth tried appellant for the offense in June 2017. After finding appellant guilty, the court ordered a pre-sentence report and conducted a sentencing hearing on October 10, 2017. At that hearing, M.V. testified about the effects of the crime and related that she had been in counseling for years. She testified that in 2016, she underwent Eye Movement Desensitization and Reprocessing ("EMDR") therapy, which allowed her to go "back to that very night in [the] living room." She stated that "it was the first time in all of those years [that she] finally had compassion for [herself] and [she] was able to start moving on." Appellant did not cross-examine M.V. concerning her statements.

Following sentencing, appellant moved to set aside the verdict on the basis of M.V.'s participation in EMDR therapy in 2016. He argued that her testimony constituted after-discovered evidence because it was the first time he "had ever heard of [M.V.'s] therapy session and the results of it." Appellant asserted that M.V. only "recover[ed] her memories of penetration" after the therapy because she returned "to that very night in [appellant's] living room" during treatment. The court denied the motion.

- 4 -

ANALYSIS

A.  Sufficiency of the Evidence

A conviction for object sexual penetration requires proof that the defendant:

> penetrate[d] the labia majora or anus of a complaining witness . . .
> with an object . . . [and that the act was] accomplished against the
> will of the complaining witness, by force, threat or intimidation.

Code § 18.2-67.2(A)(2).  Appellant contends that the evidence was insufficient to prove that he accomplished the act "by force, threat or intimidation."

This Court reviews a challenge to the sufficiency of the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible from the evidence."  Cooper v. Commonwealth, 31 Va. App. 643, 646 (2000) (*en banc*).  In conducting our review, we do not substitute our own judgment for that of the factfinder.  Linnon v. Commonwealth, 287 Va. 92, 98 (2014).  "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  We will not reverse the trial court unless its finding was plainly wrong or without evidence to support it.  Marshall v. Commonwealth, 69 Va. App. 648, 652-53 (2019).  The issue of whether the crime was committed by "force, threat or intimidation" is a question of fact.  Wactor v. Commonwealth, 38 Va. App. 375, 380 (2002).

1.  Force

When determining the sufficiency of the evidence to show that an act of object sexual penetration was committed by force, we have held that "the force used by the defendant must be sufficient to accomplish the act as well as to overcome the will of the victim."  Id. at 381.  "The degree of resistance by the victim and, consequently, the degree of force required to overcome her

will, 'necessarily depend[] on the circumstances of each case, taking into consideration the relative physical condition of the participants and the degree of force manifested.'" Id. at 382 (quoting Jones v. Commonwealth, 219 Va. 983, 986 (1979)).

Some other sexual crimes also require proof of "force, threat or intimidation." See Code § 18.2-61(A)(i) (rape), Code § 18.2-67.1(A)(2) (forcible sodomy), Code § 18.2-67.3(A)(4) (aggravated sexual battery), Code § 18.2-67.4 (sexual battery). In case law analyzing these statutes, "[f]orce generally requires proof of more than 'merely the force required to accomplish . . . the statutorily defined criminal acts.'" Sabol v. Commonwealth, 37 Va. App. 9, 16 (2001) (quoting Johnson v. Commonwealth, 5 Va. App. 529, 534 (1988)). See also Wactor, 38 Va. App. at 380-81. We found sufficient evidence of force where the defendant pushed the victim down a hallway to the bedroom before raping her there. Sabol, 37 Va. App. at 17. In an aggravated sexual battery case, the Commonwealth proved force where the defendant lay on top of the victim at night and touched her vagina. Clark v. Commonwealth, 30 Va. App. 406, 410 (1999) ("This conduct constituted force and was more force than 'that . . . required to accomplish the unlawful touching.'" (quoting Johnson, 5 Va. App. at 534)).

Circumstances supporting a finding of force include the victim's relationship to the defendant, the aggressive nature of the defendant's behavior, and the victim's fear during and after the crime. See, e.g., Jones, 219 Va. at 986-87. Similarly, in Wactor, we found "the time and place of the crime, the victim's reaction during and after the incident, as well as the parties' relationship" significant in affirming a conviction for object sexual penetration by force. 38 Va. App. at 383 (finding sufficient evidence of force where a nurse "made use of his status and professional relationship to [the victim] to initiate unwanted touching and effectuate" the crime).

Appellant argues that the Commonwealth presented "no evidence of any force in excess of that inherent in the act itself." He notes that M.V. did not testify that appellant held her down or

restrained her during the attack. However, when M.V. tried to leave because she thought appellant had fallen asleep, he grabbed her arm and pulled her back down on the sofa. He subsequently penetrated her vagina again with his fingers. Cf. Johnson, 5 Va. App. at 534-35 (finding insufficient evidence of force because defendant pulled victim down on the bed when he tried to leave *after* the unlawful touching was completed). M.V. felt that she had to stay at appellant's home because he was "aggressive" and "insistent" when she tried to leave. Here, not only did the touching occur without M.V.'s consent, it was accomplished after appellant grabbed her arm and pulled her back down on the sofa during her attempt to leave.

Further, the evidence showed that M.V. lay "[c]ompletely paralyzed" under appellant during the assault in his home. She was "completely frozen and in shock" while appellant digitally penetrated her vagina. M.V. testified that she experienced considerable physical pain as a result of appellant's acts. She also remained fearful of appellant after the incident. Therefore, the Commonwealth's evidence was sufficient to establish that appellant accomplished the object sexual penetration by force.

2. Intimidation

The evidence also was sufficient to prove that the crime was committed by intimidation. The Supreme Court has defined intimidation as follows:

> Intimidation may occur without threats. Intimidation . . . means putting a victim in fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her will. Intimidation may be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure.

Sutton v. Commonwealth, 228 Va. 654, 663 (1985) (affirming conviction for rape, in violation of Code § 18.2-61, where the evidence sufficiently proved intimidation). The "fear of bodily harm" need not be separate and apart from the fear of the possibility of bodily injury inherent in the sexual assault itself. Commonwealth v. Bower, 264 Va. 41, 45-46 (2002). A factfinder may consider "the

- 7 -

victim's age, the relative size of the defendant and victim, the familial relationship between the defendant and victim, and the vulnerable position of the victim" in evaluating whether an act was accomplished by intimidation. Id. at 46.

The Court considered these factors in affirming a defendant's conviction for animate object penetration in Bower. Id. There, the defendant lay next to his thirteen-year-old daughter in her bed where he touched her breasts and put his finger in her vagina, as she feigned sleep. Id. at 43. The victim testified that she was "frightened" and "that the assault hurt." Id. at 46. She avoided being alone with her father after the crime. Id. The Court found sufficient evidence of intimidation. Id. In addition to the child's age and relative sizes of the parties, "the parent-child relationship . . . supported the finding that Bower exercised emotional dominance over his daughter." Id. at 45-46. See also Mohajer v. Commonwealth, 40 Va. App. 312, 322-23 (2003) (*en banc*) (affirming a conviction for animate object penetration by intimidation where a masseuse falsely represented that he was a police officer and digitally penetrated an eighteen-year-old girl during her first massage).

Although M.V. was not related to appellant, she testified that he was her mentor and father figure. Appellant was "[o]ne of the people [she] trusted the most and valued the most." At the time of the incident, she was a reserved and modest teenager; she had never engaged in sexual activity. During the assault, M.V. was "completely frozen and in shock." Although she tried to leave appellant's home, she stayed when he became "aggressive" and "insistent" in demanding that she remain on the sofa with him. She described her considerable physical pain and fear of appellant after the attack. Because of the betrayal and distrust she felt after the assault, M.V. did not disclose the full details of the crime until years after the offense. A factfinder could reasonably conclude that appellant exercised emotional dominance over M.V. through his actions. She was susceptible to psychological pressure as a result of her relationship with appellant and her sexual inexperience as a teenager. M.V.'s testimony of her fear, pain, and feeling of "[c]omplete[] parlay[sis]" demonstrated

that appellant overcame her mind and will by placing her in fear of bodily harm.  See Sutton, 228 Va. at 663.  We find that, on this evidence, a factfinder could have reasonably concluded that appellant perpetrated the object sexual penetration by intimidation.

### B.  Motion for a New Trial Based on After-Discovered Evidence

Appellant contends that the court erred in denying his motion to set aside the verdict and grant him a new trial based on after-discovered evidence.  He contends that until sentencing, he was unaware that M.V. underwent EMDR therapy fifteen years after the incident.  He asserts that M.V.'s testimony of penetration was a result of that therapy, not her independent recollection, and if he possessed this information prior to trial, he would have presented evidence attacking the credibility of repressed memories and "debunked EMDR as a legitimate science."

Rule 3A:15(c) permits a trial court to "grant a new trial if it sets aside the verdict" based on after-discovered evidence.  See Lamm v.Commonwealth, 55 Va. App. 637, 642 (2010).  A motion for a new trial based on after-discovered evidence is a "matter submitted to the sound discretion of the circuit court and will be granted only under unusual circumstances after particular care and caution has been given to the evidence presented."  Orndorff v. Commonwealth, 279 Va. 597, 601 (2010) (quoting Orndorff v. Commonwealth, 271 Va. 486, 501 (2006)).  We will not reverse the court's decision except for an abuse of discretion.  Carter v. Commonwealth, 10 Va. App. 507, 514 (1990).

> To warrant a new trial, a party must show that the after-discovered evidence:
>
> (1) appears to have been discovered subsequent to the trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborative or collateral; and (4) is material, and such as should produce opposite results on the merits at another trial.

Odum v. Commonwealth, 225 Va. 123, 130 (1983).  "The moving party must establish each of these mandatory criteria."  Commonwealth v. Tweed, 264 Va. 524, 529 (2002).

Here, the court found that appellant failed to establish at least three of the criteria required to prevail on his motion. It found that appellant failed to exercise reasonable diligence, demonstrate that any after-discovered evidence was "not merely collateral," and establish materiality. The court did not abuse its discretion in finding that the evidence was immaterial and therefore did not warrant a new trial. Because appellant did not satisfy the materiality requirement, we do not address the court's other bases for denying the motion. See Luginbyhl v. Commonwealth, 48 Va. App. 58, 64 (2006) (*en banc*) ("[A]n appellate court decides cases 'on the best and narrowest ground available.'" (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring))).

To prove materiality, a defendant must show that the new evidence "should produce opposite results on the merits at another trial." Odum, 225 Va. at 130. Although after-discovered evidence merely impeaching a witness is generally not grounds for a new trial, the motion may be granted if the witness to be impeached is the "key prosecution witness." See Whittington v. Commonwealth, 5 Va. App. 212, 216 (1987) (granting new trial where defendant's rape conviction was based solely on the complaining witness' testimony who, he discovered after trial, made statements prior to trial denying that the crime occurred). However, a defendant must still establish that the evidence is "material to the extent that the outcome of the trial would have been affected." Lamm, 55 Va. App. at 645 (finding evidence that victim recovered sense of taste and smell following conviction for aggravated malicious wounding immaterial because other evidence showed the injury was permanent and significant).

Appellant asserts that M.V. did not have an independent recollection of the crime, particularly penetration, until EMDR therapy in 2016, and he did not learn of the therapy until the sentencing hearing. In support of his contention, he notes that M.V. gave only vague descriptions of appellant's actions when she spoke to Rodriguez and Olsen on the days following the crime and

never mentioned to either of them that he digitally penetrated her vagina. He asserts that M.V.'s testimony of the specifics of the crime resulted from a recovered, repressed memory, which was not reliable or credible. He contends that his lack of knowledge about this information prior to trial deprived him of the ability to cross-examine M.V. about her "recovered memory" of the crime, and to introduce expert testimony concerning repressed memories and EMDR therapy.

However, the record demonstrates that M.V.'s recollection and reporting of the incident occurred without EMDR therapy. M.V. testified that she disclosed the penetration to Rodriguez in 2010, approximately six years before the EMDR therapy. Rodriguez corroborated M.V.'s testimony. Rodriguez explained that although initially M.V. described the crime in generalities, she related the specific fact of digital penetration when they spoke in 2010. Further, M.V. explained that she did not disclose more detail when she initially told her friends about the offense in 2001 because she felt distrustful and uncomfortable explaining appellant's actions due to her modesty and traumatization. The court concluded that the evidence of EMDR therapy had no bearing on M.V.'s recollection of the specific events of the crime. Based on this record, we agree. Accordingly, the court did not err in finding that appellant did not meet his burden of showing that any after-discovered evidence was material and would have produced a different result at a new trial.

CONCLUSION

For the foregoing reasons, we conclude that the evidence was sufficient to prove that appellant committed object sexual penetration, in violation of Code § 18.2-67.2(A)(2), by force and intimidation, and the court did not err in denying his motion to set aside the verdict based on after-discovered evidence. Therefore, we affirm appellant's conviction.

Affirmed.

- 11 -