UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Causey, Raphael and Senior Judge Clements

PAUL CLAY MYERS

MEMORANDUM OPINION[*]

v.      Record No. 1544-22-4

PER CURIAM
NOVEMBER 21, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Dale B. Durrer, Judge

(Edward J. Ungvarsky; Ungvarsky Law, PLLC, on briefs), for
appellant.

(Jason S. Miyares, Attorney General; Tanner M. Russo, Assistant
Attorney General, on brief), for appellee.


Paul Clay Myers appeals his convictions for rape and object sexual penetration, arguing

that the Commonwealth failed to prove that he committed those offenses through use of "force,

threat or intimidation."  Code §§ 18.2-61, -67.2.  We find that the evidence presented at trial was

sufficient for a rational factfinder to convict Myers of both offenses.  Moreover, after examining

the briefs and the record, the panel unanimously holds that oral argument is unnecessary because

"the dispositive issue or issues have been authoritatively decided, and the appellant has not

argued that the case law should be overturned, extended, modified, or reversed."

Code § 17.1-403(ii)(b); Rule 5A:27(b).  We therefore affirm the trial court's judgment.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires that we "discard" the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor.  *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On February 1, 2019, 21-year-old college student M.G. traveled from Washington and Lee University in Lexington to Culpeper County for a weekend visit with her godmother, Katie Myers.  Although Katie was M.G.'s cousin, Katie was 20 years older and M.G. thought of her as an aunt.  That evening, Katie and M.G. went to dinner at a Culpeper restaurant and then to a local brewery, consuming alcohol at both locations.  Although M.G.'s visit to Culpeper was for "one on one time" with Katie, Katie's husband Paul Myers joined the two women at the brewery between 9:30 and 10:00 p.m., where he consumed alcohol as well.  From the brewery the three traveled by Uber to another restaurant, where they continued to consume alcohol.  Visibly intoxicated, Myers was later escorted out of the restaurant.  The three departed, again by Uber, arriving at Katie and Myers's home around 1:30 or 2:00 a.m.  M.G. was "tipsy" but not severely intoxicated.  M.G. went to the guest room, changed for bed, and fell asleep around 2:30 or 3:00 a.m.

M.G. was awakened by Myers touching her breasts over her pajama shirt.[1]  "[G]roggy, sleepy, confused," and not knowing why Myers was in the room or touching her, M.G. pretended to be asleep and tried to roll over, hoping that Myers would leave.  Myers, instead, got into bed with her and began groping her under her clothing.  "Panicked and confused," M.G. "froze up" and continued to pretend being asleep, hoping that Myers would stop and go away.  But Myers

---

[1] M.G. did not know the assailant at first.  Her assumption that it was Myers was confirmed when he spoke and she recognized his voice.

- 2 -

persisted. He removed all the clothing from M.G.'s "limp" body, leaving her completely nude. He then digitally penetrated her, both vaginally and anally. Feeling "pure terror," M.G. continued to lay still, feigning sleep, hoping that Myers would leave. He finally did.

Myers returned, however, smelling of the lotion that Katie and Myers kept in their bathroom. During his short absence, M.G. "stayed still in the bed," "afraid to make a noise," terrified of what Myers might do if he knew she were awake. Myers got back in bed with her and used M.G.'s hand to manipulate his penis, which he then inserted into her vagina; he withdrew to ejaculate. Myers stayed in bed for a while, "cuddl[ing]" her before leaving.

M.G. remained in bed until morning. When she awoke, Myers was again in her room, this time rummaging through her things looking for her car keys. He asked her to drive him to the brewery to retrieve his car. But when she froze again, Myers departed.

M.G. left the house, telling Katie that she had to go back to college early. M.G. phoned her mother and told her that Myers had digitally penetrated her; M.G. did not mention the rape. When M.G. got back to school, she reported the rape to a friend. The two went to the university student health center, and from there to the Augusta County Health Center, where M.G. reported the incident and underwent examination by a forensic nurse. M.G. reported the attack to law enforcement a few weeks later. In August 2020, Myers was arrested and charged with rape in violation of Code § 18.2-61 and object sexual penetration in violation of Code § 18.2-67.2.

M.G. testified at trial that she thought of Myers as an uncle and that she had done nothing to let him think that she wanted a sexual relationship. She said she was "frozen" in "pure terror" during the encounter and kept silent, not knowing what else to do. She was afraid of what he might do if he knew she were awake; she hoped he would stop if she pretended to be asleep.

The forensic nurse who examined M.G., Lisa Fracher, testified that she observed an "abrasive area" and a "laceration on a certain structure of [M.G.'s] vulva," as well as bruises on

her thighs.  Fracher also observed a rip in M.G.'s pajama pants.  She testified that M.G.'s injuries "support[ed] the idea of a sexual assault."  Kelly Loynes, an expert in forensic biology, testified that she detected blood in a sample taken from M.G.'s vaginal/cervical area and that M.G. was not menstruating at the time of the assault.

Finally, the Commonwealth introduced the expert testimony of Jane Probst, a psychotherapist with expertise in psychological trauma.  Probst described the basic threat responses to trauma.  She explained that, because "fighting and running are very difficult" during a sexual assault, the body's limbic system tends to trigger a "freeze" response.  Freezing is common in sexual assaults when the victim feels intimidated.  Probst described the freeze response as a survival mechanism triggered when fighting or fleeing are not viable.  The body perceives its best survival option as conserving physical resources until the victim feels safe enough to take some action, such as reporting the attack.

After the trial court denied his motion to strike, Myers testified in his own defense.  He admitted the sexual contact but claimed to think that M.G. "would be into a sexual encounter" based on "the way that she looked at" him and a "past experience" they shared, saying he felt "the same [type] of vibe."[2]  He acknowledged that M.G. did not speak during the encounter.  But Myers felt she responded "positively" to his advances by "lean[ing] into it" and "stretch[ing] out her neck."  When he thought things were "going to progress," he left the guest room to confirm that Katie was still asleep before returning.  He claimed that M.G. lifted her arms to let him remove her shirt and that she raised her hips to let him pull down her pants and underwear; he then had "intercourse" with her.

After the trial court denied Myers's renewed motion to strike, the jury convicted him of rape and object sexual penetration.  The trial court imposed a prison sentence of 33 years for rape

---

[2] Myers did not describe the "past experience."

and 34 years for object sexual penetration, suspending 25 years on each, for an active sentence of 17 years.  Myers noted a timely appeal.

ANALYSIS

Myers does not challenge the credibility of any witness.  He concedes that the Commonwealth's evidence sufficed to show that he digitally penetrated M.G. and had sexual intercourse with her without her consent.  Myers argues only that the Commonwealth failed to prove that he accomplished those acts "by force, threat or intimidation."  Code §§ 18.2-61(A), 18.2-67.2(A)(2).[3]

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'"  *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).  "The relevant issue on appeal is, 'upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Lambert v. Commonwealth*, 298 Va. 510, 515 (2020) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)).  In the context of rape and object sexual penetration, "[w]hether the act was accomplished by 'force, threat or intimidation' is ordinarily a question for the fact

---

[3] A conviction for rape requires proof that the defendant had sexual intercourse "with a complaining witness . . . against the complaining witness's will, by force, threat or intimidation."  Code § 18.2-61(A).  A conviction for object sexual penetration similarly requires proof that the defendant "penetrate[d] the labia majora or anus of a complaining witness . . . against the will of the complaining witness, by force, threat or intimidation."  Code § 18.2-67.2(A)(2).  Object sexual penetration "may be analogized to the crimes of rape (Code § 18.2-61), forcible sodomy (Code § 18.2-67.1), aggravated sexual battery (Code § 18.2-67.3), and sexual battery (Code § 18.2-67.4), in that each offense requires proof of 'force, threat, or intimidation' or 'mental incapacity' or 'physical helplessness.'"  *Wactor v. Commonwealth*, 38 Va. App. 375, 380 (2002); *see also Conley v. Commonwealth*, 74 Va. App. 658, 680 (2022) ("[W]e hold that the means of accomplishing object sexual penetration and sodomy parallel those for accomplishing rape.").

finder." *Wactor v. Commonwealth*, 38 Va. App. 375, 380 (2002) (citing *Snyder v. Commonwealth*, 220 Va. 792, 796 (1980)).

> A. *There was sufficient evidence to find that Myers committed object sexual penetration by force or intimidation.*

"[T]he force used by the defendant must be sufficient to accomplish the act as well as to overcome the will of the victim." *Bondi v. Commonwealth*, 70 Va. App. 79, 88 (2019) (citing *Wactor*, 38 Va. App. at 381). But in determining whether the force element is met, the inquiry is "whether the act or acts were effected with or without the victim's consent." *Jones v. Commonwealth*, 219 Va. 983, 986 (1979) (citing *Mings v. Commonwealth*, 85 Va. 638, 640 (1889)). Indeed, "no positive resistance" by the victim need be shown if the crime was committed without her consent. *Id.* It is a "long-standing . . . principle that in the context of sexual crimes, an act undertaken against a victim's will and without the victim's consent *is* an act undertaken with force." *Martin v. Commonwealth*, 272 Va. 31, 35 (2006) (emphasis added) (quoting *Jones*, 219 Va. at 986); *see also Bailey v. Commonwealth*, 82 Va. 107, 111 (1886) ("Wherever there is a carnal connection, and no consent in fact . . . there is evidently, in the wrongful act itself, all the force which the law demands as an element of the crime.").

Determining the degree of force required to overcome a victim's will is a circumstantial inquiry. *Wactor*, 38 Va. App. at 382; *see Jones*, 219 Va. at 986 (considering "the relative physical condition of the participants and the degree of force manifested"). The "time and place of the crime, the victim's reaction during and after the incident, as well as the parties' relationship and their relative physical capabilities" are relevant considerations. *Id.* at 383. Also relevant are "the aggressive nature of the defendant's behavior, and the victim's fear during and after the crime." *Bondi*, 70 Va. App. at 89 (finding evidence sufficient when the victim lay "completely paralyzed" and "frozen and in shock" when the defendant digitally penetrated her).

Force may be found despite the absence of physical resistance by the victim.  Indeed, this Court recently decided *Robinson v. Commonwealth*, 70 Va. App. 509 (2019) (en banc), overturning our earlier decision in *Johnson v. Commonwealth*, 5 Va. App. 529 (1988).  In *Johnson*, the defendant positioned himself in a bed behind a victim who pretended to be asleep, put his arm around the victim to hold him "very close," and then stuck his hand inside the victim's pants to touch and fondle the victim's genitals and buttocks.  *Id.* at 531, 534.  *Johnson* found that such evidence failed to show sexual abuse accomplished by force, *id.*, but we said in *Robinson* that "*Johnson* was wrongly decided," 70 Va. App. at 516.

The term "intimidation" means "putting a victim in fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her will."  *Mohajer v. Commonwealth*, 40 Va. App. 312, 322 (2003) (quoting *Sutton v. Commonwealth*, 228 Va. 654, 663 (1985)).  Intimidation "may be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure."  *Id.* (citing *Sutton*, 228 Va. at 663); *see also Wactor*, 38 Va. App. at 383-84 (victim was in vulnerable position as a patient in hospital under the care of the assailant-nurse).  "Matters such as the victim's age, the relative size of the defendant and victim, the familial relationship between the defendant and victim, and the vulnerable position of the victim . . . are relevant matters to be considered . . . when determining whether the victim was put in fear of bodily harm."  *Commonwealth v. Bower*, 264 Va. 41, 46 (2002).  "The 'fear of bodily harm' need not be separate and apart from the fear of the possibility of bodily injury inherent in the sexual assault itself."  *Bondi*, 70 Va. App. at 90 (quoting *Bower*, 264 Va. at 45-46).  "'[F]ear of bodily harm' and intimidat[ion]" may be shown from "the totality of the circumstances."  *Mohajer*, 40 Va. App. at 323.

For instance, in *Mohajer*, the defendant (a massage therapist) touched the victim's breasts and vagina during a massage, and the victim's body "locked down" because she was "scared to

death." 40 Va. App. at 316-17. Considering the totality of the circumstances, "notably [the victim's] statements of fear, the vaginal injury she sustained, and the vulnerable position in which she was placed," we held that a reasonable jury could infer that the defendant "'put [the victim] in fear of bodily harm' and intimidated her into submission." *Id.* at 323 (citing *Sutton*, 228 Va. at 663); *see also Bower*, 264 Va. at 45-46 (finding evidence sufficient to support object sexual penetration by intimidation when the victim was "frightened" and "scared," pretending to be asleep).

Here, the totality of the circumstances supports a finding of object sexual penetration by force or intimidation. M.G. was awakened in the middle of the night when Myers touched her breasts over her shirt. Myers got in bed with her and proceeded to touch M.G. without her consent. M.G. attempted to "roll over," hoping Myers would leave. But Myers persisted, touching M.G. under her shirt and underwear and then removing her clothing. "Afraid," "panicked," and "confused," M.G. lay "frozen," thinking that she needed to feign being asleep. Once M.G. was naked, Myers stuck his fingers in her vagina.

The use of force was shown because Myers ripped M.G.'s pajama pants while pulling them off. That "completely new rip" corroborated the "aggressive nature of [Myers's] behavior." *Bondi*, 70 Va. App. at 89.

The "time and place" of these events, M.G.'s relationship to Myers, and M.G.'s fear and shock also support a finding of force or intimidation. Myers entered M.G.'s bed during the middle of the night when she was asleep. M.G. was a guest in the house and just feet away from Katie and Myers's bedroom. *Cf. id.* (victim was sexually penetrated while at the defendant's home babysitting); *Wactor*, 38 Va. App. at 383-84 (victim was sexually penetrated by caretaker in hospital room). M.G. considered Myers to be part of her family, like an uncle. *Cf. Wactor*, 38 Va. App. at 383 (defendant caretaker held a position of trust with victim); *Bondi*, 70 Va. App. at

86 (defendant was "mentor and father figure" to babysitter victim). And M.G. was so panicked during and after the attack that she froze, pretending to be asleep. *See Bondi*, 70 Va. App. at 89-90 (finding sufficient evidence to prove force where victim lay "[c]ompletely paralyzed," "completely frozen and in shock" while the defendant digitally penetrated her vagina). Even after Myers left the room, M.G. "stayed still in the bed," "afraid to make a noise."

B. *There was also sufficient evidence to find that Myers committed rape by force or intimidation.*

The evidence likewise supports the jury's finding that Myers raped M.G. through the use of force or intimidation. After he digitally penetrated her, Myers left the room. M.G. remained quietly "frozen" in bed, fearful of what might happen if Myers realized she was awake. Myers returned, got back into bed, took M.G.'s hand "and us[ed] it to rub his penis," then inserted his penis into M.G.'s vagina. M.G. experienced "pure terror" and continued to feign being asleep.

Like the evidence supporting the digital-penetration conviction, the circumstances show the use of force or intimidation to commit the rape. Myers's aggression toward M.G. instilled terror in her, causing her to freeze during and after the assault. *See Bower*, 264 Va. at 46 (finding evidence sufficient to show force when victim was "frightened" and "scared" and pretended to be asleep during the assault); *Bondi*, 70 Va. App. at 85, 89-90 (finding evidence sufficient to show force when victim lay "[c]ompletely paralyzed" and felt "shaken" and "scared" when the defendant sexually assaulted her). The abrasion and laceration to M.G.'s vaginal area, along with the ripped pajama bottoms, bruising on M.G.'s thighs, and blood in her vaginal/cervical area supported the finding of rape by force. And the psychological trauma that caused M.G. to freeze and feign sleeping also supported the finding of force and intimidation.

CONCLUSION

In short, there was ample evidence in the record for a reasonable jury to conclude that Myers digitally penetrated and raped M.G. through the use of force or intimidation.

*Affirmed.*