COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Athey and White
Argued at Salem, Virginia

PAUL TRAVIS EDWARDS

v.        Record No. 0160-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE CLIFFORD L. ATHEY, JR.
JANUARY 17, 2023

FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

Daniel P. Gaylon, Assistant Public Defender, for appellant.

John W. Beamer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Paul Travis Edwards ("Edwards") appeals an order convicting him of ten counts of

aggravated sexual battery by a parent and two counts of misdemeanor sexual battery, after a bench

trial in the Circuit Court of Henry County ("trial court").  Edwards argues the evidence failed to

establish the *corpus delicti* of the ten aggravated sexual battery offenses because it did not

corroborate his confession.  He also challenges the sufficiency of the evidence to sustain his

misdemeanor sexual battery convictions.  For the following reasons, we affirm the trial court's

judgment.

I. BACKGROUND

Edwards and his former wife Amy Thomas ("Thomas") adopted K.E. and her younger

brother when K.E. was six years old.  When Edwards and Thomas divorced in 2015, K.E., who was

about to start high school, continued to live with Edwards in the former family home.  At trial, K.E.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

testified that a "few weeks" after the divorce, Edwards came into her bedroom one night, got into her bed, and "touch[ed]" and "kiss[ed]" her breasts and vagina. K.E. also testified that Edwards touched her "all over [her] body and stuff and kind of [did] things to [her] that [she] didn't like." On another occasion, after praying together before bedtime, she testified that Edwards came into her bedroom, got into bed, and kissed and touched her as she had "described earlier."

K.E. testified that Edwards abused her in this same manner "so many times" that she could not "give an exact number." Nevertheless, she asserted that it happened at least "ten" or "fifteen" times before she turned eighteen, and it "feels like" it happened "more than twenty times." The incidents always occurred in her bedroom at night; she was always awake, but "didn't say anything every time that it happened." Sometime in 2015 or 2016, K.E. realized that what Edwards was doing "wasn't right," but she "didn't know how to express that to anybody."

K.E. testified that around December 9, 2019, when she was eighteen years old, Edwards entered her bedroom, got into her bed, touched her breasts and her vagina over her clothes, and tried to "bring [her] close to him." Hoping Edwards would stop, K.E. moved closer to the wall beside her bed to get away but she did not object because she "was afraid." After "probably five or ten minutes," she testified that Edwards left the room and she immediately sent a text message to her boyfriend, Mark Belton, reporting the abuse because she was "scared" and "didn't know what else to do."

The next day, Belton and K.E. told their pastor, Susan Adkins, about the abuse, and the three of them confronted Edwards at Adkins's home concerning the abuse. Edwards "confirmed" during the confrontation that K.E.'s allegations were true but emphasized that "it was just touching." Edwards stated that he "was aware that what he had done was wrong" and claimed that he "was really, really sorry." He also stated that he would "get counseling" and "work on being a better person." K.E. stayed at Belton's house for about a week before returning home, but she did not

report the incident to police because she wanted to give Edwards a "chance" to go through counseling.

K.E. further testified that one evening around Valentine's Day in 2020, K.E., her brother, and Edwards were sitting on their couch at home watching a movie. About ten or fifteen minutes after K.E.'s brother went to bed, K.E. "laid down" on the couch beside Edwards because she was drowsy but "didn't feel like getting up." Her eyes were partly closed, and she was trying to go to sleep when Edwards began touching her breasts and vagina and asked her if it was "okay." She testified that she responded, "no, I [don't] like this," but was "scared and confused" because she knew he had been going to counseling. Although she did not immediately "push[] him away," "after a few minutes," she "retreated to a spare bedroom." Edwards then opened the spare bedroom door, apologized, and left. K.E. reported the incident to her boyfriend Belton the next day, and together they went to the Henry County Sheriff's Office to report the abuse to Lieutenant Mitchell Turner ("Lieutenant Turner").

In an interview with Lieutenant Turner, Edwards admitted that after separating from Thomas in 2015, he touched K.E.'s vagina "on top of her clothes" while they were at home when she was fifteen years old. He stated K.E. did not say anything but "allowed it." He further admitted that he touched her "breasts," "vagina," or "both" "approximately 10 times before she turned 18." Each incident was at the family home, and K.E. was always awake. Edwards also had kissed K.E.'s breasts.

Edwards also admitted that in December 2019, he "went into [K.E.'s] room with the intention of touching her" and "got in the bed with her." Nevertheless, he claimed that he left without touching her because "she didn't want [him] to." He recounted meeting with K.E., Belton, and Adkins a few days later, apologizing, and agreeing to go to counseling.

Edwards also admitted to Lieutenant Turner that after two counseling sessions, he was "doing better until" the evening he and K.E. were on the couch watching a movie. Edwards admitted "touch[ing] her" on the couch but claimed that she said it was "ok." He further claimed that after he "touched her breasts under her shirt," she "took [his] hand and placed it on her vagina on the outside of her pants," before K.E. "pulled her shirt down and got up." Edwards claimed that K.E. "was always in control" and he "never did anything she didn't allow." He also asserted that, during the "10 times" when she was younger than eighteen, she would occasionally "get in bed with" him and "move [his] hand down there." Other times, he went into her room.

At trial, Thomas testified for the defense that after Edwards was arrested, K.E. told her that the two incidents in 2019 and 2020 were the only two times Edwards had done anything to her. Thomas stated that as time passed, she noticed that K.E. was "carrying" "a burden." She testified that K.E. subsequently told her that Edwards's confession to incidents that happened before she turned eighteen were true, that she "felt ashamed" and "scared," and that she "felt like" "she allowed" Edwards to touch her. She stated that K.E. felt that she was "being dishonest" because she did not report the other incidents right away and because she had said she was not awake during the incidents in 2019 and 2020.

After the close of evidence and closing argument, the trial court found that K.E.'s testimony about the frequency of the incidents "comport[ed] with the frequency" indicated in Edwards's confession. The trial court also found that Edwards had also confessed twice—first to Pastor Adkins and then to Lieutenant Turner. Accordingly, the trial court convicted Edwards of ten counts of aggravated sexual battery by a parent and two counts of misdemeanor sexual battery.[1] Edwards timely appealed the convictions.

---

[1] After Edwards moved to strike the evidence at the close of the Commonwealth's case-in-chief, the trial court reduced the two charges of aggravated sexual battery arising from the two incidents when K.E. was eighteen to sexual battery.

II. ANALYSIS

A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

B. *The Commonwealth did present corroborative evidence sufficient to establish the corpus delicti.*

Edwards contends that the evidence at trial failed to establish the *corpus delicti* of the ten aggravated sexual battery offenses because the evidence did not corroborate his confession. He stresses that K.E. "was not sure" how many incidents happened before she was eighteen, could only "detail two" of those incidents, and was not "sure exactly how old she was." Given that "lack of certainty," Edwards argues that the evidence demonstrated only that Edwards had the opportunity to commit the crimes and failed to "establish the *corpus delicti*" of each of the ten offenses. We disagree.

"The corpus delicti rule requires the Commonwealth to introduce evidence independent of an extrajudicial confession to prove that the confessed crime actually occurred—that is, to prove the

corpus delicti." *Park v. Commonwealth*, 74 Va. App. 635, 655 (2022) (quoting *Allen v. Commonwealth*, 287 Va. 68, 72 (2014)). "Only '*slight corroboration* of [a] confession is required to establish corpus delicti beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Allen*, 287 Va. at 74). The "slight corroboration need not be 'of all the contents of the confession, or even all the elements of the crime.'" *Allen*, 287 Va. at 74 (quoting *Watkins v. Commonwealth*, 238 Va. 341, 348 (1989)). Indeed, "[t]he confession is itself competent evidence tending to prove the *corpus delicti*, and all that is required of the Commonwealth in such a case is to present evidence of such circumstances as will, when taken in connection with the confession, establish the *corpus delicti* beyond a reasonable doubt." *Watkins*, 238 Va. at 349. An eyewitness's testimony "detailing the occurrence of the illegal act can help satisfy the slight corroboration requirement." *Allen*, 287 Va. at 74. "The question whether there exists evidence in corroboration of the confession is . . . a question for the trier of fact." *Jefferson v. Commonwealth*, 6 Va. App. 421, 425 (1988).

Here, Edwards confessed that he touched K.E.'s breasts, vagina, or both approximately ten occasions before she turned eighteen and that the first time happened shortly after his then-wife left the family home in 2015. K.E.'s testimony largely tracked that confession. She testified that "a few weeks" after Thomas left the family home in 2015, Edwards came into her bedroom, got into her bed, and "touch[ed]" and "kiss[ed]" her breasts and vagina. Notably, K.E. further confirmed that the abuse happened on *at least* "ten" or "fifteen" occasions, or perhaps "more than twenty times." Edwards twice confessed that K.E. was awake and never said anything during the incidents. K.E.'s testimony confirmed that she was always awake and "didn't say anything every time that it happened." Edwards confessed that the incidents always happened at the family home. K.E. testified that the incidents always occurred in her bedroom at night.

Edward's reliance on *Allen* is misplaced. There, the only substantive evidence apart from the defendant's confession to sexually abusing his grandson came from his daughter's testimony

- 6 -

that he "had various opportunities to be alone with his grandson." *Allen*, 287 Va. at 75. Among those opportunities were times in which Allen fell asleep with or wrestled with his grandson—activities which were "just as consistent with non-commission of aggravated sexual battery as with its commission." *Id.* at 76. Here, by contrast, K.E. testified that Edwards committed the acts of sexual abuse to which he had confessed, not merely that he had opportunity to perpetrate them. Her testimony, independent of his confession, established that Edwards touched and kissed her breasts and vagina on at least ten, and perhaps more than twenty, occasions. These acts to which K.E. testified were consistent only with the commission of aggravated sexual battery. *See* Code §§ 18.2-67.3(A)(3), -67.10 (defining aggravated sexual battery by a parent as an act in which, with "the intent to sexually molest, arouse, or gratify any person," the parent "intentionally touches the" child's "intimate parts"—among them, the "genitalia" and breast—or "material directly covering such intimate parts").

In sum, the record demonstrates that K.E.'s testimony substantially corroborated Edwards's confession to each of the ten counts of aggravated sexual battery. K.E.'s testimony was not impeached, and her credibility is not challenged on appeal. Thus, the Commonwealth's evidence proved the *corpus delicti* of each of the aggravated sexual battery offenses. *Watkins*, 238 Va. at 349.

C. *The evidence was sufficient to support the convictions of misdemeanor sexual battery.*

Edwards contends that the evidence was insufficient to sustain his two convictions for misdemeanor sexual battery because it failed to prove that he abused K.E. against her will by force, threat, intimidation, or ruse in the 2019 and 2020 incidents. He argues that K.E. was not asleep during either incident and he did "not restrain her movement in the bed or on the couch." He further argues that he made no threats and did not try "to trick the victim into a vulnerable position so that he could touch her." Finally, he contends that K.E., a "college-age[d] adult," was "not under the

- 7 -

psychological pressure to show that her will was overborne" during either incident.  Thus, he contends, the evidence was insufficient to support his convictions.  We disagree.

"An accused is guilty of sexual battery if he sexually abuses, as defined in § 18.2-67.10, . . . the complaining witness against the will of the complaining witness, by force, threat, intimidation, or ruse."  Code § 18.2-67.4(A).  Sexual abuse is "an act committed with the intent to sexually molest, arouse, or gratify any person, where . . . [t]he accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts."  Code § 18.2-67.10.  Intimate parts are "the genitalia, anus, groin, breast, or buttocks of any person."  *Id.*

Intimidation "may occur without threats" because it involves "putting a victim in fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her will.  Intimidation may be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure."  *Bondi v. Commonwealth*, 70 Va. App. 79, 90 (2019) (quoting *Sutton v. Commonwealth*, 228 Va. 654, 663 (1985)).  In determining whether the act was accomplished through intimidation, the factfinder "may consider 'the victim's age, . . . the familial relationship between the defendant and victim, and the vulnerable position of the victim.'"  *Id.* (quoting *Commonwealth v. Bower*, 264 Va. 41, 46 (2002)).

Consistent with those principles, we have held that a defendant's "paternal bond" with his victim is a "highly relevant circumstance" when considering whether that sexual abuse was accomplished through intimidation.  *Clark v. Commonwealth*, 30 Va. App. 406, 410-11 (1999).  In *Clark*, the defendant began sexually abusing his daughter when she was very young and did it "so often and for so long, she did not realize his conduct was improper until she learned about sexual abuse in a sex education class at school."  *Id.* at 410.  Even then, the victim "allowed [the abuse] to continue because she was unable to confront her father."  *Id.*  In affirming the defendant's

- 8 -

conviction for aggravated sexual battery, we rejected his argument that "the paternal relationship [was] insufficient to prove intimidation," holding that the "paternal bond, along with the victim's age and relative isolation from others, impeded her ability to resist her father." *Id.* at 410-11. The victim was "vulnerable and susceptible to pressure from her father," which supported "the finding that her will was overcome." *Id.* at 411.

The record in this case similarly demonstrates a pattern of sexual abuse that began when K.E. was young. Edwards and Thomas adopted K.E. when she was six years old, and she continued to live with Edwards in the former family home after he divorced Thomas in 2015. Shortly after the divorce, Edwards began repeatedly abusing K.E. by touching and kissing her breasts and vagina. The trial court could reasonably infer that this frequent abuse, which began while K.E. was young and occurred potentially "more than twenty" times, placed an immense amount of psychological and emotional pressure on her. *See id*. at 410 (holding that the defendant's frequent abuse of the victim, beginning "when she was very young," contributed to "circumstances of emotional domination").

Then, during the 2019 incident shortly after K.E. became an adult, Edwards got into her bed, touched her breasts and vagina, and tried to "bring [her] close to him." K.E. testified that she was "scared" and did not know what to do. She moved closer to the wall beside her bed, trying to get away from Edwards and hoping he would stop, but did not say anything because she "was afraid." Similarly, K.E. testified that she was "scared and confused" when Edwards began touching her breasts and vagina on the couch during the 2020 incident. When Edwards asked if it was "okay," K.E. said "no" but did not immediately stop him because she was afraid.

Considering K.E.'s testimony against the backdrop of Edwards's frequent and repeated sexual abuse of her as a child, there is sufficient evidence to demonstrate that both the 2019 and 2020 offenses were accomplished against her will. Indeed, K.E.'s testimony "described

- 9 -

circumstances of emotional domination sufficient to constitute intimidation." *Id.* Thus, the Commonwealth's evidence was competent, not inherently incredible, and sufficient to sustain Edwards's convictions.

## III. CONCLUSION

For the reasons stated above, the judgment of the trial court is affirmed.

*Affirmed.*