COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Fulton and Callins
Argued at Richmond, Virginia


DAVONN BASSETTE

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1187-22-2                     JUDGE DOMINIQUE A. CALLINS
                                                        JANUARY 23, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
W. Allan Sharrett, Judge

(Amanda Nicole Mann, on brief), for appellant. Appellant
submitting on brief.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Davonn Bassette appeals his conviction of rape under Code § 18.2-61, for which he was

sentenced to 28 years of incarceration. He argues that the evidence was insufficient to establish that

he overcame the victim's will by force, threat, or intimidation. He also contends that the trial court

erred by permitting the Commonwealth to introduce evidence of the victim's cognitive impairments

and preventing him from introducing evidence that the victim engaged in sexual activity with

another person two days before the alleged rape. We find no error and affirm the trial court's

judgment.

BACKGROUND

"On appeal, we view the record in the light most favorable to the Commonwealth

because it was the prevailing party below." *Delp v. Commonwealth*, 72 Va. App. 227, 230

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

(2020). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

Z.R. was nearly two years old when she entered the household of Bassette's family, first as a foster child, then as an adopted daughter.[1] Bassette was around 11 years old when his family began caring for Z.R.; he was also an adopted child. As they grew up as siblings, Bassette babysat for Z.R. at times and he was aware of her cognitive impairments that resulted in specialized schooling and psychiatric evaluations. Z.R. graduated high school with a third grade reading level and received disability benefits as an adult. She lived alone in her apartment but had trouble maintaining work. Z.R. developed a close, sibling relationship with Bassette that continued into adulthood and was never romantic. Growing up together, Z.R. "adored" Bassette as "her hero" and "always called him her brother."

In the early morning hours of July 7, 2021, Bassette texted Z.R. asking if he could visit her apartment. Although communication with Bassette at this time of day was not typical, Z.R. thought he needed a place to stay and it was normal for him to spend time at her apartment. Z.R. testified that Bassette was drunk when he arrived. She noticed that he smelled of alcohol, slurred his words, and walked oddly. Bassette wore a T-shirt and pants; Z.R. wore a nightgown, which she described as a "pajama dress." While in her bedroom—the only area in the apartment to watch television, they talked and smoked a gram of marijuana that Bassette brought with him.

At some point, Bassette started a "play fight" with Z.R., during which he made physical contact with Z.R. and challenged her to "beat him." When Z.R. pushed him back, Bassette

---

[1] Due to the nature of the offense, we are using the victim's initials to protect her privacy.

placed her in a headlock. Z.R. could not breathe. She attempted to "tap out" of the headlock, a standard signal between the two of them to stop play fighting. Bassette did not release her, but continued to keep her in the headlock for about a minute. Z.R. testified that she did not lose consciousness, but that she did start seeing spots before Bassette released her. Z.R. also testified that after Bassette let her go she was "[t]errified" because she did not know what else he was going to do.

Bassette then began raising Z.R.'s pajama dress. He told Z.R. that he liked her and wanted to "do stuff" and that they did not have to tell anyone else about it. Bassette told Z.R., "don't fight it" and began rubbing her shoulders, arms, and chest. Z.R. testified that she shook her head and avoided looking at him but stayed silent out of fear. Bassette kissed Z.R. and positioned himself on top of Z.R. on the bed. Bassette asked Z.R. to have sex with him and said they could stop and never talk about it again. Z.R. answered "yes" and "I'm good" to his questions. Z.R. testified that she answered that way because she was afraid of what Bassette would do if she said no and she believed he would continue anyway. Before intercourse, Bassette pulled Z.R.'s hand to his penis to stimulate him. Z.R. testified that she complied because she worried he would punch her or attack her for refusing. During the 10 to 15 minutes of sexual intercourse, Bassette grabbed Z.R.'s arms, leaving visible red scratches.

Z.R. testified that she understood what sexual intercourse was and that having sex meant that a penis was inserted into a vagina. Z.R. described the sexual intercourse with Bassette as painful, and Bassette said nothing to Z.R. during the sexual intercourse. After Bassette stopped, Z.R. believed the sexual intercourse was over but Bassette went into the living room and told her he was not done yet. Bassette then bent Z.R. over the couch so she faced away from him, and he reinserted his penis into her vagina. Z.R. again said nothing due to fear. Bassette ejaculated on

Z.R.'s buttocks, and DNA testing later showed that Bassette could not be eliminated as a major contributor to the genetic material found on Z.R.'s buttocks and internal genitals.

Before he left the apartment, Bassette told Z.R. not to tell anyone else what happened between them. Z.R. then went to a friend's home, where she called her mother and reported the rape to the police. A few hours later, the police interviewed Z.R. about the incident. Z.R. then went to a hospital and underwent a physical examination performed by Ashley Balcombe, a forensic nurse.

Balcombe testified as an expert in the fields of sexual assault and strangulation. The Commonwealth introduced a photograph Balcombe took of the red scratches on Z.R.'s arm. Balcombe's examination of Z.R.'s genitals revealed markings consistent with consensual or nonconsensual intercourse. Z.R. reported strangulation symptoms to Balcombe, including difficulty breathing, dizziness, a sore throat and headache, coughing and a raspy voice, trouble swallowing, neck pain, hyperventilation, and feelings of agitation and combativeness. Balcombe found no marks on Z.R.'s neck but testified that only about half of strangulation victims will show such markings.

Bassette was arrested and indicted for rape under Code § 18.2-61. The indictment specified that Bassette committed the rape "by having sexual intercourse with Z.R., when such act was accomplished against the victim's will, by force, threat, or intimidation of or against the victim or another person." The indictment did not charge that the rape was accomplished through Z.R.'s mental incapacity. *See* Code § 18.2-61(A)(ii). Bassette was also indicted for strangulation under Code § 18.2-51.6.

Before trial, Bassette argued a motion *in limine* to restrict the Commonwealth's theory of rape to "force, threat, or intimidation" and to prevent the Commonwealth from presenting any evidence or argument that the rape was accomplished through Z.R.'s mental incapacity. The

trial court denied the motion. The trial court also denied Bassette's motion to introduce evidence that Z.R. had a sexual encounter with a person other than Bassette two days before the alleged rape.

At the close of the Commonwealth's evidence at trial, Bassette moved to strike the evidence, asserting that the Commonwealth failed to establish that the sexual intercourse was accomplished by Z.R.'s mental incapacity or through force, threat, or intimidation. The trial court granted the motion in part, agreeing that the Commonwealth failed to present sufficient evidence of Z.R.'s mental incapacity but finding there was sufficient evidence of force, threat, or intimidation to permit the case to proceed to the jury on that theory.

In his defense, Bassette testified that he did not consider Z.R. to be his little sister growing up, that he was unaware that Z.R. had any significant cognitive impairments, and that he released her from the chokehold as soon as she tapped out. Bassette testified that, after he began kissing Z.R., she "put her hand up" and appeared uncomfortable and Bassette asked her if she was "good" to continue. On direct examination, Bassette testified that he "grabbed her hand" to place it on his penis to stimulate himself, but on cross-examination he claimed that he only "assisted her hand to [his] genital area."

At the close of all the evidence, Bassette moved to strike on the grounds that the evidence did not prove that the sexual intercourse was accomplished against the victim's will by force, threat, or intimidation. The trial court denied the motion.

The trial court instructed the jury that Bassette could only be found guilty of rape if it was by means of force, threat, or intimidation. After deliberation, the jury found Bassette guilty of rape and not guilty of strangulation. Bassette filed a post-trial motion to set aside the verdict for the same reasons asserted in the motions to strike. The trial court denied the motion and sentenced Bassette to 28 years of incarceration. Bassette now appeals.

ANALYSIS

## I. Sufficiency of Evidence

Bassette asserts that the trial court erred in denying his motions to strike and to set aside the verdict. He argues that the Commonwealth's evidence was insufficient to prove that the sexual intercourse was "accomplished against the victim's will by force, threat, or intimidation."

"On appellate review of a criminal conviction for sufficiency of the evidence to support the conviction, the relevant question is . . . whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010). "When reviewing the sufficiency of the evidence to support a conviction, th[is] Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008). "Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below. 'We also accord the Commonwealth the benefit of all inferences fairly deducible from the evidence.'" *Id.* (citations omitted).

To be guilty of rape under Code § 18.2-61(A)(i), a person must have "sexual intercourse with a complaining witness . . . against the complaining witness's will, by force, threat or intimidation of or against the complaining witness or another person." "The issue of whether the crime was committed by 'force, threat or intimidation' is a question of fact." *Bondi v. Commonwealth*, 70 Va. App. 79, 88 (2019) (quoting *Wactor v. Commonwealth*, 38 Va. App. 375, 380 (2002)).

Rape by intimidation occurs by "putting a victim in fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her will. Intimidation may be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure." *Sabol v. Commonwealth*, 37 Va. App. 9, 18

(2001) (quoting *Sutton v. Commonwealth*, 228 Va. 654, 663 (1985)). Circumstances such as "the victim's age, the relative size of the defendant and victim, the familial relationship between the defendant and victim, and the vulnerable position of the victim" are relevant factors in evaluating whether an act was accomplished by intimidation. *Bondi*, 70 Va. App. at 90 (quoting *Commonwealth v. Bower*, 264 Va. 41, 46 (2002)).

"[T]he required [proof of] intent is established upon proof that the accused knowingly and intentionally committed the acts constituting the elements of rape," and the Commonwealth need not prove that the defendant "harbored a 'specific intent that the intercourse be without consent.'" *Commonwealth v. Minor*, 267 Va. 166, 173-74 (2004) (emphasis omitted) (first quoting *Clifton v. Commonwealth*, 22 Va. App. 178, 184 (1996); and then quoting *Commonwealth v. Grant*, 464 N.E.2d 33, 36 (Mass. 1984)).

"[A] conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Poole v. Commonwealth*, 73 Va. App. 357, 368 (2021) (quoting *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005)). "The credibility of the witnesses and the weight accorded the evidence are matters *solely for the fact finder*" and will only be disturbed by this Court if the witness's testimony is inherently incredible as a matter of law. *Perkins*, 295 Va. at 328 (quoting *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Id.* (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Here, the evidence is sufficient to establish that Bassette had sexual intercourse with Z.R. against her will and accomplished through intimidation. Z.R. testified that before Bassette had sexual intercourse with her, they had been "play fighting." Then Bassette placed her in a

headlock and refused to release her when she tapped out.[2] Bassette's conduct placed Z.R. in a state of fear. Z.R. also testified that, when Bassette began to sexually engage her, she responded "yes" to his sexual proposition only because she was terrified of further violence from Bassette. Additionally, the jury was entitled to consider how Z.R.'s cognitive impairments and perception of Bassette as her brother rendered her more "vulnerable and susceptible" to the physical and psychological pressure Bassette placed on her. *Sutton*, 228 Va. at 663. It was not inherently incredible as a matter of law that any statements made by Z.R. that she was "good" during the sexual encounter resulted from intimidation and fear after Bassette refused to immediately release her from the headlock.

Notwithstanding Bassette's claim that he believed the sexual intercourse was consensual, the Commonwealth was not required to prove that Bassette set out to rape Z.R., only that he intentionally committed the acts and, as a result, overbore Z.R.'s will through intimidation. *Minor*, 267 Va. at 173-74. Considering Z.R.'s testimony and the surrounding circumstances, a reasonable factfinder could conclude beyond a reasonable doubt that the sexual intercourse was accomplished through intimidation. Thus, the trial court did not err in denying Bassette's motions to strike and set aside the verdict.

## II. Indictment Language

Bassette asserts that the trial court erred in denying his motion to limit the Commonwealth's case to only the language contained in the indictment—that the rape was accomplished through force, threat, or intimidation, rather than through the victim's mental incapacity. We conclude that this issue is moot. "A case becomes moot 'when the issues

---

[2] Bassette argues that this evidence should be disregarded because the jury found him not guilty of strangulation, but it is a well-settled principle of law that juries are entitled to reach inconsistent verdicts. *McQuinn v. Commonwealth*, 298 Va. 456, 458-61 (2020); *Commonwealth v. Greer*, 63 Va. App. 561, 570-71 (2014).

presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"

*Howard v. Commonwealth*, 74 Va. App. 739, 752 (2022) (quoting *Ingram v. Commonwealth*, 62

Va. App. 14, 21 (2013)). "An appeal may have issues that are both moot and not moot." *Id.*

(quoting *Ingram*, 62 Va. App. at 23 n.2).

Although the trial court denied Bassette's motion *in limine*, it later granted Bassette's

motion to strike the Commonwealth's claim that the rape was accomplished though Z.R.'s

mental incapacity. The trial court also instructed the jury that it could find Bassette guilty of

rape only if the evidence proved that the rape was accomplished by force, threat, or intimidation.

Bassette argues that the trial court's denial of his motion *in limine* permitted the Commonwealth

to introduce evidence of Z.R.'s cognitive impairments, causing "confusion" to the jury. This

argument implies that if the trial court had granted the motion *in limine*, the Commonwealth

would have been precluded from introducing evidence of Z.R.'s cognitive impairments. Even

so, such evidence was still relevant to whether Z.R.'s will was overborne by force, threat, or

intimidation and the jury was entitled to consider the evidence within that context. Regardless of

whether the trial court should have granted the motion *in limine*, the evidence of the case would

not have changed. The jury was ultimately instructed only on the theory of rape contained in

Bassette's indictment. For these reasons, this argument on appeal is moot.

### III. Evidence of Prior Sexual Acts

Bassette argues that the trial court erred in denying his motion to introduce evidence that

Z.R. engaged in consensual sex with a third party two days before the alleged rape. Bassette

asserts that this evidence would be relevant because it was "probative as to the ultimate issue of

incapacity." But mental incapacity was not a theory of rape put before the jury at the close of

trial. The trial court instructed the jury that Bassette could only be found guilty of rape if the

sexual encounter was accomplished "by force, threat, or intimidation." Bassette was not entitled

to present evidence to contradict a theory of rape that was not ultimately presented to the jury. This assignment of error is therefore moot.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

*Affirmed.*